# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

            Plaintiff,

    v.                                      Case No. 07-CR-219

LARRY J. LUPTON

            Defendant.

## MAGISTRATE JUDGE'S RECOMMENDATION TO THE HONORABLE LYNN ADELMAN

## NATURE OF CASE

On August 14, 2007, a federal grand jury sitting in this district returned a four-count indictment against defendant Larry J. Lupton. Count One charges a violation of 18 U.S.C.(a)(1)(B), the federal bribery statute. Specifically, Count One charges that the defendant corruptly solicited, demanded and agreed to accept something of value from Broker A, intending to be influenced and rewarded in connection with a business, transaction and series of transactions of the State of Wisconsin Department of Administration (DOA) involving something of value of $5,000. Count Two charges that the defendant knowingly devised and participated in a scheme to defraud Equis and the State of Wisconsin of both property and the right of honest services and, for the purposes of executing the scheme, transmitted and caused to be transmitted a wire communication from Wisconsin to Illinois, in violation of 18 U.S.C. §§ 1343 and 1346. Counts Three and Four charge the defendant with knowingly and willfully making materially false statements to an agent of the Federal Bureau of Investigation (FBI) on or about May 10, 2007, and May 18, 2007, respectively, on matters within the jurisdiction of the FBI, a federal agency, in violation of 18 U.S.C. § 1001.

On August 16, 2007, the defendant appeared before United States Magistrate Judge Aaron E. Goodstein for arraignment, entering a plea of not guilty. Pursuant to the pretrial scheduling order issued at that time, the defendant has filed a motion to suppress electronically recorded conversations (Docket #10) and a motion to dismiss the indictment. (Docket #12). These motions will be addressed herein.[1]

## MOTION TO SUPPRESS
## ELECTRONICALLY RECORDED CONVERSATIONS

The defendant asserts that all tape-recorded conversations of the defendant must be suppressed because the recordings, which were obtained by agents of the Wisconsin Department of Justice, Division of Criminal Investigation (DCI), were not conducted in accordance with the laws of Wisconsin or Illinois. The defendant also maintains that Counts One, Three and Four do not charge crimes which allow for court authorization of the interception of wire, oral or electronic communications under 18 U.S.C. § 2516, and absent conformity with state law requirements, no recordings may be admitted into evidence to prove these counts. The defendant further states that the authenticity, completeness and integrity of the electronically recorded conversations have not been established. Finally, the defendant states that he has not received one particular recording from the government.

in response, the government states that two recording devices captured the same conversation and that now both copies of the recordings – one from the FBI recording device and one from the DCI recording device – have been provided to the defendant. The government also accurately points out that authentication of the recordings is a matter for trial. Before the recordings can be admitted into evidence, the government must lay a proper foundation for their admission.

---

[1]The defendant also filed a motion for discovery (Docket #9), which previously was denied by the court.

With respect to the defendant's argument that Counts One, Three and Four do not charge crimes which allow for even court authorization of the interception of wire, oral or electronic communications under 18 U.S.C. § 2516, the government asserts that § 2516, as well as other provisions of Title III, are inapplicable to conversations that, as in this case, are recorded with the consent of one of the participants. Section 2511(2)(c)(2) of Title 18 United States Code states:

> It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

According to the government, the confidential informant consented to the interceptions. Thus, the court concludes that the defendant's argument on this issue is without merit. Therefore, for the reasons set forth herein, the defendant has failed to establish a basis for suppression of the recorded statements on the foregoing three grounds.

As noted, the defendant also maintains that the recorded conversations are subject to suppression because they were not made in accordance with the laws of the States of Illinois and Wisconsin. However, the recorded conversations in this case are admissible under federal law when one of the parties to the conversations has consented to the interception. 18 U.S.C. § 2511(2)(c)(2). "As long as the recorded conversations are admissible under federal law, they are admissible in federal court, notwithstanding that the recordings might not have been admissible in state court." United States v. Goodapple, 958 F.2d 1402, 1410 n.3 (7th Cir. 1992) (citing United States v. D'Antoni, 874 F.2d 1214, 1218-19 ([7th Cir. 1989]).

Therefore, the fact that the recorded conversations may not have complied with state law does not warrant their suppression in this federal action where such recordings are not

- 3 -

unlawful under federal law. Accordingly, the defendant has not established a basis for suppression of these recorded conversations. Thus, for the reasons stated herein, the court will recommend that the United States district judge enter an order denying the defendant's motion to suppress electronically recorded statements.

## MOTION TO DISMISS

The defendant seeks dismissal of the indictment on several grounds. Basically he contends that each of the counts fails to state a criminal offense and that Counts One and Two should be dismissed for violations of the Speedy Trial Act, 18 U.S.C. § 3162(a)(1) and the Sixth Amendment to the United States Constitution. The government opposes the motion.

### Speedy Trial Act

The defendant asserts that because a criminal complaint against him was filed and served on May 10, 2007, and the indictment was filed on August 14, 2007, the indictment was untimely under the Speedy Trial Act and must be dismissed. In response, the government asserts that the defendant's factual assertion is inaccurate and, therefore, his legal conclusion is incorrect. Specifically, the government states that, contrary to the defendant's assertion, he was not served with a copy of the complaint on May 10, 2007. Rather, the defendant's attorney acknowledged that as of June 1, 2007, the defendant "has not been arrested, served with a criminal complaint or entered any sort of an appearance." (Government's Consolidated Response to Defendant's Pretrial Motions [Government's Response], Exh. 2 at 1).

Section 3161(b) of Title 18, United States Code, provides in relevant part:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

- 4 -

Here, the defendant made his initial appearance on the criminal complaint on July 30, 2007. The indictment was filed 15 days later on August 14, 2007. The defendant has provided no information to establish that he was arrested or served with the complaint more than 30 days prior to the filing of the indictment. Therefore, the indictment was not untimely and the court will recommend that it not be dismissed on this ground.

The defendant challenges the sufficiency of each count in the indictment, basically asserting that each count fails to state an offense. Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." In United States v. Palumbo Bros., Inc., 145 F.3d 850, 860 (7th Cir. 1998), the court of appeals for this circuit summarized the standard for reviewing objections to the sufficiency of an indictment as follows:

> To properly proceed with a prosecution, the government must allege conduct violative of a federal statute. United States v. Sloan, 939 F.2d 499, 501 (7th Cir. 1991). An indictment must include all of the essential elements of the crimes alleged therein, and each basis for conviction must be "clearly set out in the indictment." United States v. Miller, 471 U.S. 130, 136, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985); United States v. Susanne Yoon, 128 F.3d 515, 521-22 (7th Cir. 1997). In reviewing the sufficiency of an indictment, a court should consider each "challenged count as a whole and should refrain from reading it in a hypertechnical manner." United States v. McNeese, 901 F.2d 585, 602 (7th Cir. 1990). The indictment must be "read to include facts which are necessarily implied" and "construed according to common sense." United States v. Blinder, 10 F.3d 1468, 1471 (9th Cir. 1993); Yoon, 128 F.3d at 521-22.

To be sufficient, an indictment must satisfy three requirements: (1) the indictment must state all of the elements of the offense charged; (2) it must be sufficiently specific to adequately inform the defendant of the charges so that he may prepare a defense; and (3) it must enable the defendant to plead double jeopardy in any future prosecution for the same

- 5 -

offense.  United States v. Sandoval, 347 F.3d 627, 633 (7th Cir. 2003); United States v. Glecier, 923 F.2d 496, 499 (7th Cir. 1991).  An indictment is generally sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished.  Hamling v. United States, 418 U.S. 87, 117-18 (1974); United States v. Agostino, 132 F.3d 1183, 1189 (7th Cir. 1997).

Although an indictment that is in the words of the statute itself is generally sufficient and preferred, the indictment need not track the exact language of the statute.  United States v. Weatherspoon, 581 F.2d 595, 600 (7th Cir. 1978).  It must, however, allege each element of the offense in a form which substantially states it.  Id.  In other words "while an indictment must allege all of the elements necessary to prove a violation of the statute, 'it is not necessary to spell out each element, [so long as] each element [is] present in context.'" United States v. Westmoreland, 240 F.3d 618, 633 (7th Cir. 2001) (quoting United States v. Smith, 223 F.3d 554, 571 [7th Cir. 2000]).  Thus, "[t]he test for validity [of an indictment] is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards."  United States v. Hausmann, 345 F.3d 952, 955 (7th Cir. 2003) (quoting United States v. Allender, 62 F.3d 909, 914 [7th Cir. 1995]).

The defendant contends that Count One is insufficient because 1) the indictment fails to allege that the defendant's actions threatened the integrity of federal funds or programs; 2) the defendant is not an agent as the term is used in § 666; 3) the indictment fails to define how the defendant acted "corruptly" as the term is used in § 666; 4) the payment sought by the defendant involved bona fide compensation to be paid in the usual course of business; and 5) the letters of intent submitted by potential competing bidders were subject to the Wisconsin Open Records law and are not confidential. In this regard, the defendant

specifically asserts that "such information in the hands of [the defendant] as a state contractor is a 'record' which is subject to full disclosure to any persons unless a formal sealed bid process is instituted which is <u>not</u> alleged to have occurred here and did not occur." (Plaintiff's Motion to Dismiss at 2).

The defendant raises a similar confidentiality argument with respect to Counts Two and Three. With respect to Count Two, he maintains that the indictment fails to identify any legal basis for the assertion that prospective bidder proposals are confidential and not public records and that disclosure by an independent contractor in a non-sealed bid format violates any established duty to Equis or the State of Wisconsin. With respect to Count Three, the defendant reasserts that prospective buyer bids are public records under the Wisconsin Open Records law and therefore, "any statement reflecting their disclosure cannot be 'material', whether factually correct or not, because it not a criminal act to disclose same." (Plaintiff's Motion to Dismiss at 3). In addition to the Wisconsin Open Records law, the defendant cites <u>United States v. George</u>, 477 F.2d 508, 512 (7th Cir. 1973) to support his contentions. It is unclear as to why the defendant cited <u>George</u> since it addresses neither the confidentiality of records nor the Wisconsin Open Records law.

In response, the government asserts that the defendant misused his position for private gain in part by failing to keep confidential the specific terms of the proposals submitted by the competing bidders. The government maintains that this duty of confidentiality included the duty not to disclose to one prospective buyer the specific terms of another prospective buyer's proposal, citing various subsections of Wis. Stat. § 452.133.

Section 452.133 sets forth the duties of real estate brokers to persons involved in the transaction which include "a duty to provide brokerage services honestly and fairly" (Wis. Stat. 452.133[1][a]) and "a duty to keep confidential any information given to the broker in

- 7 -

confidence, or any information obtained by the broker that he or she knows a reasonable person would want to be kept confidential . . .." (Wis Stat. § 453.133 [1][d]).   A real estate broker also owes a duty to loyally represent his client's interest by placing the client's interest ahead of his own interests (Wis. Stat. §452.133[2][a]) and has a "duty to disclose to the client all information known by the broker that is material to the transaction. . .."   Section 452.133(3)(a) further provides: "In providing brokerage services, a broker may not . . . [a]ccept any fee or compensation related to the transaction from any person other than the broker's client, unless the broker has the written consent of all parties to the transaction."

The defendant's public records argument is essentially an assertion that he has a defense to the charges in the indictment.   He contends that he has evidence – the Wisconsin Open Records law – which will rebut the government's proof of an essential element of the charged offenses.   This challenge to the government's proof is an issue to be addressed at the time of trial, not in a pretrial motion.   At this stage, each of the four Counts in the indictment sufficiently alleges the essential elements of the offense charged in that count. Therefore, the defendant's reliance on the Wisconsin Open Records law does not warrant dismissal of any counts at the stage of the proceedings.

Count One charges an offense under the federal bribery statute.   To state an offense under 18 U.S.C. § 666, the indictment must allege the following elements: 1) that the defendant was an agent of an organization, a state government or a state government agency; 2) that the defendant solicited, demanded, accepted or agreed to accept anything of value from another person; 3) that the defendant did so corruptly with the intent to be influenced or rewarded in connection with some business, transaction or series of transactions of the organization or state agency; 4) that this business, transaction or series of transactions involved anything of a value of $5,000 or more; and 5) that the organization

- 8 -

or state agency received benefits of more than $10,000 in federal funds. Seventh Circuit Federal Jury Instructions - Criminal (1999) at 216; Salinas v. United States, 522 U.S. 52, 56-57 (1997).

In Salinas, the court held that the statute's "expansive, unqualified language, both as to the bribes forbidden and the entities covered, does not support the interpretation that federal funds must be affected to violate § 666(a)(1)(B)." 522 U.S. at 56-57. Thus, contrary to the defendant's assertion, Salinas did not engraft upon § 666 an essential element that requires proof that the defendant's conduct posed a threat or had an adverse impact on federal funds or programs. In fact, two of the cases cited by the defendant to support his position – United States v. Santopietro, 166 F.3d 88, 93 (2nd Cir. 1999) and United States v. Zwick, 199 F.3d 672, 687 (3rd Cir. 1999) – have been explicitly overruled on this issue. See Sabri v. United States, 541 U.S. 600, 604 (2004). Thus, the indictment need not allege that the defendant's conduct negatively impacted federal funds.

The defendant also asserts that he is not an "agent" for purposes of § 666, citing the Restatement (Second) of Agency and United States v. Ferber, 966 F.Supp. 90 (D. Mass. 1997) and United States v. Phillips, 219 F.3d 404 (5th Cir. 2000). The government maintains that the defendant is an "agent" as the term is defined in § 666.

Section 666(d) defines "agent" as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a . . . representative." In enacting § 666, Congress chose to expressly define "agent" for purposes of the statute. Nothing in the statute or its legislative history suggests that the court should look elsewhere for a definition of "agency" and incorporate such definition into the statute. In fact, the legislative history reveals that Congress intended the statutory definition of "agent" to be utilized, not some definition in extrinsic sources. "The term 'agent', 'organization',

'government agency' . . . are defined in subsection (d) and require no further explication."
Comprehensive Crime Control Act of 1983, S. Rep. No. 98-225 at 370 (1983); see also,
United States v. Vitillo, 490 F.3d 314, 323 (3rd Cir. 2007).

In Phillips, the court applied the definition of "agent" in § 666(d) and concluded that the
tax assessor, who received no salary or benefits from the parish and who was supervised by
a state board controlled by state officials, was not an agent of the parish under § 666(d).
Noting the particular facts of the case, the court, therefore, reversed the defendants'
convictions with respect to § 666.  In Ferber, the court also applied the statutory definition of
"agent." At the completion of the government's case, the court concluded that the defendant
was not an "agent" within the meaning of the statute and dismissed the § 666 counts.

These cases are clearly distinguishable on their facts.  In addition, in both cases, the
court concluded after evidence was presented at trial that, based on that evidence, the
government had not established that the defendants were "agents" under § 666.

In his reply brief, the defendant asserts that "[i]n order to proceed to trial the defendant
must be apprised what theory of 'agency' is to be applied."  (Defendant's Reply Brief in
Support of Pretrial Motions [Defendant's Reply Brief] at 3).  None of the cases mentioned by
the defendant support this broad assertion.  The defendant cites Vitillo to support his
contention that the indictment is insufficient.  In Vitillo, the defendants were convicted of
violating § 666 and moved for a new trial.  The Court of Appeals for the Third Circuit held that
an independent contractor may be covered by § 666 and concluded that the indictment
alleged facts sufficient to establish that they were "agents" under § 666.  490 F.3d at 323-24.

Here, the indictment alleges that UGL Equis Corporation (Equis), a real estate firm,
was retained by the Wisconsin Department of Administration (DOA) to serve as DOA's
exclusive agent in the sale of the DOA office building in Madison, Wisconsin, and that the

defendant, an independent contractor, was engaged by Equis to handle the sale of the DOA building and provide related services. He was assigned the task of contacting and negotiating with persons potentially interested in buying the DOA office building. The defendant's responsibilities included evaluating the proposals submitted by potential buyers and making recommendations to the DOA as to which proposals were best.

The indictment further provides that the defendant had a duty to evaluate competing proposals honestly and fairly and to disclose to the DOA all information that was material to the sale of the DOA office building, including disclosure of any personal financial interest he had in a particular bidder being accepted. The indictment further states that the defendant had a duty to keep confidential the specific terms of proposals submitted by the competing bidders and a duty not to accept from any person or entity other than the DOA, any compensation related to the sale of the building.

Based on his duties and responsibilities, the defendant was authorized to act on behalf of the State in conjunction with the sale of the DOA office building. Therefore, the court concludes that the indictment alleges facts sufficient to establish that the defendant was an "agent" under § 666. Moreover, at this stage of the proceedings, the court does not weigh the government's evidence. At trial, the government will have to present evidence that the defendant was an "agent" within the meaning of § 666(d) and the defendant will have an opportunity to challenge such evidence. Accordingly, the court concludes that the defendant's argument that he is not an "agent" within the meaning of the statute is not grounds for dismissal of the indictment at this juncture.

The defendant maintains that the indictment fails to define how the defendant acted "corruptly" to the detriment of a public agency, an essential element of a § 666 violation. To prove a § 666 charge, the government must establish as an element that the defendant acted

corruptly "with the intent to be influenced or rewarded in connection with some business, [or] transaction of the organization or state agency." Seventh Circuit Federal Jury Instructions – Criminal (1999) at 216. Acting corruptly has been defined as "acting voluntarily and intentionally and with the purpose, at least in part, of accomplishing either an unlawful end result or a lawful end result by some unlawful method or means." United States v. Bonito, 57 F.3d 167, 171 (2nd Cir. 1995). Thus, a person acts corruptly when he acts with the understanding that he is being offered something of value to influence or reward him in connection with his organizational or official duties. See Id.

The defendant characterizes his conduct as involving the splitting of a real estate commission contractually due from the state. He states that such conduct is neither corrupt nor a kickback. The defendant argues that "it is the State which is the sole focus of harm for purposes of 18 U.S.C. § 666." (Defendant's Memorandum of Law in Support of Pretrial Motions [Defendant's Memorandum] at 8). He maintains that "[a]bsent a breach of duty to the state and resultant harm, there is no 'corruptly' element." Id.

Contrary to the defendant's assertion, the legislative history of § 666 provides that it was enacted "to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud and undue influence by bribery." S. Rep. No. 98-225 at 370 (1983). Similarly, in Fischer v. United States, 529 U.S. 667 (2000), a case challenging a § 666 prosecution, the court acknowledged the government's interest in protecting the integrity of the federal Medicare program from financial fraud.

In this case, the indictment charges that the defendant acted "corruptly" and describes that he misused his position by seeking a monetary kickback from the broker of a particular buyer in exchange for the defendant's assistance in ensuring that the proposal submitted by that broker's client was accepted as the winning proposal. The indictment further details that

- 12 -

the defendant disclosed to this broker the specific terms of proposals submitted by competing prospective buyers and sought direct payment from the broker in a form that would allow the defendant to conceal the payment from Equis and the DOA.

These allegations adequately set forth the element of corrupt action on the part of the defendant. The government, of course, will have to prove at trial that the defendant acted "corruptly." However, at this stage of the proceedings, the indictment sufficiently alleges that the defendant acted "corruptly."

The defendant also maintains that Count One is subject to dismissal because all "moneys to be paid real estate broker(s), however split by them internally, was set by the brokerage agreement with the State of Wisconsin. (Defendant's Motions to Dismiss at 2). He further asserts that "none of that money can be relied upon for pecuniary threshold purposes pursuant to *18 U.S.C. § 666(c)* because it involves *bona fide* compensation to be paid in the usual course of business." Id. The defendant states that he was not seeking a kickback from the broker, but was merely negotiating with him as to how they would split the commission. He asserts that such commission split falls within the statutory exception to liability set forth in § 666(c).

In opposing the motion, the government assert that the bona fide compensation exception set forth in § 666(c) is an affirmative defense which the government need not allege in the indictment. The government cites United States v. Dixon, __ U.S. __, 126 S.Ct. 2437, 2445-46 (2006) to support its position. In Dixon, the Court stated that "where Congress has enacted an affirmative defense in the proviso of the statute, the 'settled ruled in this jurisdiction [is] that an indictment or other pleading . . . need not negative the matter of an exception made by a proviso or other distinct clause . . . and that it is incumbent on one who relies on such an exception to set up and establish it.'" Id. (quoting McKelvey v. United States,

Case 2:07-cr-00219-LA    Filed 10/26/07    Page 13 of 22    Document 23

260 U.S. 353, 357 [1922]) (other citation omitted). The government further asserts that the defendant can challenge its evidence on this issue at trial, but at this juncture, the indictment alleges each of the essential elements of a § 666 offense.

Section 666(c) provides that the statute "does not apply to bona fide . . . compensation paid . . . in the usual course of business." In United States v. Warner, 292 F. Supp. 2d 1051, 1063 (N.D. Ill. 2003), cited by the defendant, the court granted the defendant's motion to dismiss with respect to the charges that he defrauded the public of its intangible right to his honest services because he was a private citizen who did not owe a fiduciary duty to the citizens of Illinois or to the Illinois Secretary of State's office. In so concluding, the court rejected the government's assertion that the defendant's brief membership on the Secretary of State's Transition Team, along with continued engagement is that office's management duties, was sufficient to establish the requisite fiduciary duty. The court pointed out that the Transition Team issued its final report on March 1, 1991, just two months after the defendant's alleged scheme to defraud allegedly began. Moreover, the government acknowledged that the defendant was never an official or employee of the Secretary of State's Office, but, nonetheless, argued that a fiduciary relationship can arise even in the absence of actual employment or compensation. Id. at 1060. The court refused to adopt such an "expansive" construction of the mail fraud statute. Id. at 1061.

Similarly, in United States v. Bloom, 149 F.3d 649 (7th Cir. 1998), also cited by the defendant, the court affirmed the trial court's decision that the alleged act of the defendant, who was a lawyer and city alderman, of counseling a client to place an illegal bid at a tax scavenger sale did not support a mail fraud prosecution under an "intangible rights" theory. In so concluding, the court found that the defendant was not alleged to have misused his aldermanic position or the information he obtained for personal gain.

The defendant also cites United States v. Mills, 140 F.3d 630, 633 (6th Cir. 1998). In Mills, the court held that, pursuant to the bona fide salary exception in §666, bona fide salaries paid to deputy sheriffs who allegedly secured their positions through illegal transactions could not be considered in determining whether the statute's $5,000 transactional valuation had been satisfied. Rather, the court found that the money required to secure the positions in the first instance were to be used in determining the true value of the allegedly illegal transactions. Because those amounts, which ranged from $3,500 to $3,930, were below the $5,000 statutory floor, the appeals court held that the counts premised upon alleged violations of §666 appropriately were dismissed.

The allegations in this case are clearly distinguishable from the cases cited by the defendant. The indictment alleges that the defendant, an independent contractor, was engaged by Equis, a real estate firm retained by the DOA to serve as DOA's exclusive agent in the sale of the DOA office building in Madison and to handle the sale of the building and provide related services. His responsibilities included contacting and negotiating with persons interested in buying the DOA building, evaluating proposals submitted by potential buyers and making recommendations to the DOA as to which proposals were best. As the indictment further provides, the defendant had a duty to evaluate the competing proposals honestly and fairly and to provide the DOA with all information that was material to the sale of its building, including disclosing any personal financial interest he had in a particular bid being accepted. The indictment further states that he had a duty to keep the terms of competing bids confidential and a duty to not accept any compensation related to the sale from any person or entity other than the DOA. Thus, the defendant was authorized to act on behalf of the State with respect to the sale of the DOA building.

Based on a review of the allegations in the indictment and relevant case law, the court concludes that Count One is not subject to dismissal at this juncture. At trial, the defendant will have an opportunity to challenge the government's evidence, or offer evidence of his own, challenging the nature of the payments allegedly solicited from the broker. Count One adequately alleges each of the essential elements of an offense under § 666.

Count Two of the indictment charges a wire fraud offense. At the outset, the Court notes that 18 U.S.C. §§ 1341 and 1343 share virtually identical language, so they are of equal scope and should be construed with reference to one another. See Carpenter v. United States, 484 U.S. 19, 25-28 (1987), Lombardo v. United States, 865 F.2d 155, 157 (7th Cir. 1989). "The elements of wire fraud under 18 U.S.C. §1343 directly parallel those of the mail fraud statute." United States v. Briscoe, 65 F.3d 576, 583 (7th Cir. 1995). To establish wire fraud, the government must prove the following elements: 1) a scheme to defraud; 2) an intent to defraud; and 3) use of an interstate telephone call or electronic communication made in furtherance of the scheme to defraud. United States v. Sloan, 492 F.3d 884, 890 (7th Cir. 2007); Briscoe, 65 F.3d at 583; see also, Seventh Circuit Federal Jury Instructions - Criminal (1999) at 259.

The defendant asserts that Count Two fails to allege facts constituting a violation of 18 U.S.C. §§ 1343 and 1346 with respect to "honest services." Specifically, he maintains that "18 U.S.C. § 1346 cannot be used to prosecute a private citizen who is not a public official or public employee." (Defendant's Motion to Dismiss at 3). He further asserts that § 1343 cannot be used to criminally prosecute a fraudulent diversion of "honest services" because only diversion of property or money may form the basis of such a prosecution. In addition, the defendant states that in McNally v. United States, 483 U.S. 350 (1987), the Supreme Court unequivocally ruled that "honest services" fraud was not a legally viable theory of

prosecution under the mail fraud statute. He also states that the indictment fails to identify any legal basis for the assertions that prospective bidder proposals are "confidential" and not public records.

To support his position that as a private citizen he cannot be prosecuted under §1346, the defendant merely cites United States v. Antico, 275 F.3d 245 (3rd Cir. 2001), but provides no information about its applicability to his contention. In Antico, the defendant was charged with one count of racketeering in violation of 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act (RICO), nine counts of extortion in violation of 19 U.S.C. §1951, the Hobbs Act and eight substantive counts of wire fraud in violation of 18 U.S.C. § 1343. The court explained that other courts have interpreted a scheme or artifice to defraud to include "the scheme or artifice to deprive another of the intangible right of honest services, giving rise to the 'intangible rights doctrine.'" Id. at 261 (internal citations omitted). The court stated: "This doctrine reaches public and private fraud at the state and local levels. . .." Id. The court further explained that honest services fraud "typically occurs in two scenarios: (1) bribery, where a legislator was paid for a particular decision or action; or (2) failure to disclose a conflict of interest resulting in personal gain." Id. at 262-63. The court continued: "This duty to disclose a conflict of interest arises in the private sector from the fiduciary relationship between an employer and employee. In the public sector, the duty is oftentimes prescribed by state and local ethics laws." Id. at 262. There is no indication in Antico that § 1346 is limited to public officials or employees. Thus, the defendant's contention is not supported by Antico.

Furthermore, §1346 merely defines a 'scheme and artifice to defraud' to include "a scheme or artifice to deprive another of the intangible right of honest services." The statute does not limit such a scheme or artifice to defraud to actions of only public officials or

- 17 -

employees.  Moreover, courts have applied the honest services theory of mail fraud to private citizens.  See e.g. Hausmann, 345 F.3d at 956 (finding a duty of honest services based on an attorney-client relationship); United States v. Montani, 204 F.3d 761, 769 (7th Cir. 2000) (applying the honest services theory based on an employee-employer relationship). Accordingly, the court finds the defendant's argument on this issue without merit.

The defendant also asserts that since the Supreme Court in McNally, 483 U.S. 350, "unequivocally ruled in 1987 that 'honest services' fraud was not a legally viable theory of prosecution" under §1341, Count Two must be dismissed.  (Defendant's Memorandum at 9). The defendant does mention that McNally has, in effect, been overruled.

In McNally, 483 U.S. at 360-61, the Court rejected the intangible rights theory of liability, holding that the mail fraud statute required proof that a scheme to defraud was directed at depriving others of money or other tangible property.  The Court invited Congress to speak more clearly if it intended the statute to apply to deprivations of intangible rights.  In response, the following year, Congress enacted §1346 which explicitly extends the scope of the mail and wire fraud statutes to include "a scheme or artifice to deprive another of the intangible right of honest services."  18 U.S.C. § 1346; see also, Cleveland v. United States, 531 U.S. 12, 19-20 (2000) (Court states that the enactment of §1346 was a direct congressional response to McNally.).  Thus, Congress, in effect, overruled the holding in McNally and restored the doctrine of honest services fraud to its pre-McNally status.  See United States v. Bloom, 149 F.3d 649, 655-56 (7th Cir. 1998).  Accordingly, given the enactment of § 1346, the holding in McNally has effectively been overruled.

The defendant's assertion that he cannot be prosecuted criminally under § 1343 because only diversion of money or property may form the basis of such prosecution also lacks merit.  In this case, the defendant is charged in Count Two with knowingly devising and

- 18 -

participating in "a scheme to defraud Equis and the State of Wisconsin of *both* property and the right to honest services." (Indictment, Count Two) (emphasis added). Moreover, with the enactment of §1346, either is a valid basis for a wire fraud prosecution.

Count Three and Count Four charge the defendant with making false statements in connection with the FBI's investigation into the bribery and wire fraud offenses. In order to establish a violation of §1001, the government must prove that the defendant: "(1) made a statement; (2) that was false; (3) that was material; (4) that it was made knowingly and willingly; and (5) that concerned a matter within the jurisdiction of a federal department or agency." United States v. Ringer, 300 F.3d 788, 791 (7th Cir. 2002); see also, Seventh Circuit Federal Jury Instructions - Criminal (1999) at 240.

The defendant makes several arguments with respect to these counts. With respect to Count Three, the defendant contends that all terms of prospective buyer bids are public records under Wisconsin's Public Records Law and, therefore, any statement reflecting their disclosure cannot be material. He also maintains, without citation to any authority, that the offense charged in Count Three would be a lesser included offense of the offense charged in Count Two.

The court has already addressed and rejected the defendant's argument with respect to the Wisconsin Open Records law. With respect to defendant's lesser included offense argument: "A lesser included offense is necessarily included in the charged offense if its elements are a subset of the charged offense." United States v. Murphy, 406 F.3d 857, 861 (7th Cir. 2005) (citing United States v. McCullough, 348 F.3d 620, 624 [7th Cir. 2003] [other citation omitted]). However, an offense is not a lesser included offense if it contains an element not required by the greater offense. Id.

In this case, Count Two charges the defendant with devising and participating in a scheme to defraud, while Count Three charges that the defendant lied to the FBI about whether or not he had done so. The elements of the offenses are different. To establish a violation of §1001, as charged in Count Three, the government must establish not only that the defendant knowingly and willfully made a material false statement, but it must also establish that such statement concerned a matter within the jurisdiction of a federal department or agency. Ringer, 300 F.3d at 791. However, to establish wire fraud, the government needs to establish that the defendant engaged in a scheme to defraud with an intent to defraud and that he used a telephone call in furtherance of the fraudulent scheme. Sloan, 492 F.3d at 890.

Count Three contains at least one element – proof of a materially false statement concerning a matter within the jurisdiction of a federal department or agency – not required in Count Two. Therefore, Count Three is not a lesser included offense of wire fraud charged in Count Two.

With respect to both Courts Three and Four, the false statement counts, the defendant contends the statements are not material. As to Count Three, he asserts that any statement he made regarding the terms of prospective buyer bids was not material because under Wisconsin's public records law such disclosure is not a crime. With regard to Count Four, the defendant likewise maintains that his alleged statement on May 18, 2007, is not a material fact. The defendant cites no authority to support these contentions.

In also contending that Count Four does not set forth an act upon which criminal charges can be asserted, the defendant asserts that the terms of his "proffer letter" agreement with the government do not allow the statements he made during an interview with the FBI to constitute a crime.

- 20 -

The defendant was interviewed by the FBI on May 18, 2007, pursuant to a written agreement with the government. The agreement provided that "should this office determine that your client has given false, incomplete or misleading information, any and all of his statements may be used against him in a prosecution for perjury, obstruction of justice, or making a false statement." (Government's Response Brief, Exh. 1 at 1). Thus, the defendant's contentions about the proffer letter are without merit.

With respect to the defendant's contention that his alleged statements to the agents were not material, a "statement is material if it had the effect of influencing the action of the [agency], or was capable of or had the potential to do so. It is not necessary that the statement actually have that influence or be relied on by the [agency], so long as it had the potential or capacity to do so." Seventh Circuit Jury Instructions - Criminal (1999) at 245. As an element of a §1001 offense, the issue of materiality of the statements is a matter for the jury. The government will have to establish at trial that the defendant's allegedly false statements were material. The defendant can challenge the government's evidence through cross examination or by presenting his own evidence. Accordingly, at this stage, Counts Three and Four are not subject to dismissal on this ground.

In sum, for the reasons set forth herein, the court concludes that the defendant has not established grounds to dismiss Counts One, Two, Three and Four of the indictment based on all the grounds asserted in his motion and supporting briefs. Accordingly, this court will recommend that the United States district judge enter an order denying the defendant's motion to dismiss the counts of the indictment. (Docket # 12). The court will also recommend that the United States district judge enter an order denying the defendant's motion to suppress electronically recorded conversations. (Docket #10).

## CONCLUSION

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that the United States district judge enter an order **denying** defendant Lupton's motion to suppress electronically recorded conversations.  (Docket #10).

**IT IS FURTHER RECOMMENDED** that the United States district judge enter an order **denying** defendant Lupton's motion to dismiss on all the grounds stated in his motion. (Docket #12).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and General Local Rule 72.3 (E.D. Wis.), whereby. based on the agreement of the parties, written objections to any recommendation herein or part thereof may be filed within five business days of service of this order.  Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures.  Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case.  Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin, this 26th day of October, 2007.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge