# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
         **Plaintiff,**

    **v.**                                    **Case No. 07-CR-219**

**LARRY LUPTON**
         **Defendant.**

---

## <u>DECISION AND ORDER</u>

Defendant Larry Lupton is charged in a four count indictment with bribery (count one), 18 U.S.C. § 666(a)(1)(B), wire fraud (count two), 18 U.S.C. §§ 1343 & 1346, and making false statements to an FBI agent (counts three and four), 18 U.S.C. § 1001. The government alleges that defendant, retained by the state of Wisconsin to act as a real estate broker in connection with the sale of a state building, executed a scheme to defraud and violated § 666 by sharing confidential bid information and soliciting a kickback from the broker for an interested buyer, then lied to the FBI about his conduct.

Defendant filed motions to suppress recorded conversations and to dismiss the indictment on various grounds. The motions were referred to a magistrate judge, who recommended that they be denied. Defendant objects, requiring me to review the motions de novo. Fed. R. Crim. P. 59(b)(3).

## I. MOTION TO SUPPRESS

As part of the investigation of this case, state and federal agents recorded in-person and telephonic conversations between defendant and a cooperating witness (the broker for a potential buyer of the state building). In his motion to suppress, defendant argued that the

recording violated Wisconsin and Illinois state law, which requires the consent of both parties to a conversation,[1] and that counts one, three and four do not charge crimes permitting the authorization of electronic interception under 18 U.S.C. § 2516. (Def.'s Mot. to Suppress [R. 10] at 1-2.) The magistrate judge properly rejected both contentions.

Regarding defendant's first contention, as the magistrate judge noted, the Seventh Circuit has held that so "long as the recorded conversations are admissible under federal law, they are admissible in federal court, notwithstanding that the recordings might not have been admissible in state court." United States v. Goodapple, 958 F.2d 1402, 1410 n.3 (7th Cir. 1992) (citing United States v. D'Antoni, 874 F.2d 1214, 1218-19 (7th Cir. 1989)). Further, as in Goodapple, this case was apparently investigated by state and federal agents working in tandem, so the federal wiretapping statutes apply.[2] Id.

_____

[1]The conversations apparently occurred in Wisconsin and Illinois.

[2]In his motion to suppress, defendant cited cases from other circuits for the proposition that evidence obtained by state agents in violation of state law cannot be introduced in federal court, even if it would be admissible under less stringent federal standards. (Def.'s Mot. to Suppress at 1.) In his objections, he states that the magistrate judge ignored the circuit split on this issue. (Def.'s Objections [R. 25] at 4.) The existence of a circuit split is irrelevant where, as here, the Seventh Circuit has spoken on the issue; district courts must follow their circuit's position. See Hart v. Wal-Mart Stores, Inc. Associates' Health and Welfare Plan, 360 F.3d 674, 680 (7th Cir. 2004). As is pertinent to this motion, the Seventh Circuit has concluded that federal law controls on the issue of admissibility of recorded conversations. In any event, the cases defendant cites are distinguishable. The lead case, United States v. Bascaro, 742 F.2d 1335, 1346-47 (11th Cir. 1984) (citing United States v. McNulty, 729 F.2d 1243, 1264 (10th Cir. 1984) (en banc); United States v. Marion, 535 F.2d 697 (2d Cir. 1976)), abrogated on other grounds by United States v. Lewis, 492 F.3d 1219, 1221 (11th Cir. 2007), pertained to the validity of a state wiretap order obtained by state agents from a state court. In the present case, the recordings were not obtained pursuant to the order of any court, state or federal. In United States v. Butz, 982 F.2d 1378, 1383 (9th Cir. 1993), the court declined to suppress evidence obtained by state agents pursuant to a pen register invalidated by a subsequent change in state law. The court held that the agents relied in good faith on the law at the time, and that the purposes of the exclusionary rule would not be served by suppression. Butz does not support suppression in the present case.

2

Under federal wiretap law, it is not unlawful "for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c). Based on the undisputed facts, the cooperating witness who participated in the recorded conversations with defendant consented to the recording.[3] Therefore, the interception of these conversations by law enforcement did not violate federal law. Further, because these calls were intercepted by consent, the other provisions of Title III do not apply, making it irrelevant that several of the charged offenses are not listed in 18 U.S.C. § 2516. See United States v. Dawson, 425 F.3d 389, 393 (7th Cir. 2005) (stating that "Title III is inapplicable to conversations that, as here, are recorded with the consent of one of the participants"). Thus, defendant's second contention also fails.

In his objections, defendant appears to raise a different theory of suppression. He contends that § 2511(2)(c) addresses only "interception" of electronic communications; it does not authorize "disclosure." He cites 18 U.S.C. § 2515, which states that intercepted oral communications may not be "received in evidence in any trial, hearing, or other proceeding in or before any court . . . if the disclosure of that information would be in violation of this chapter." He further cites 18 U.S.C. § 2511(2)(a)(ii), which permits the provision of information to a person authorized by law to intercept communications pursuant to either a court order or certification from an appropriate official that no warrant or court order is required by law. Defendant claims that the cases cited by the magistrate judge do not address the statutory

_____

[3]Defendant did not request an evidentiary hearing or contest the government's assertion before the magistrate judge that the cooperator so consented; nor does he object to the magistrate judge's finding of consent. Thus, for purposes of the present motion, I find that the cooperating witness consented to the recording.

3

issue he raises.  (Def.'s Objections at 4, citing D'Antoni, 874 F.2d at 1218 ("Defendants do not argue that this evidence was obtained in violation of federal law.").)

The new argument fails.  Section 2511(2)(a)(ii) pertains to service providers who, pursuant to court order or other certification, provide information or assistance to persons authorized to intercept communications.  It has nothing to do with the issue before me.  Further, §§ 2511(2)(a)(ii) and 2515 and similar "disclosure" provisions of Title III simply do not apply where, as here, the communications were lawfully recorded under § 2511(2)(c).  See, e.g., In re High Fructose Corn Syrup Antitrust Litigation, 216 F.3d 621, 624-25 (7th Cir. 2000) (holding that conversations lawfully recorded under § 2511(2)(c) or (d) are exempt from all of the use and disclosure restrictions of Title III); see also Dawson, 425 F.3d at 393 (explaining that Title III is inapplicable to conversations recorded with the consent of one of the participants).

Therefore, for all of these reasons and those stated by the magistrate judge, defendant's motion to suppress recorded conversations must be denied.

## II.  MOTION TO DISMISS

Defendant moved to dismiss the indictment, arguing that (A) it was returned late under the Speedy Trial Act and (B) each count of the indictment is in some way legally deficient.

### A.  Speedy Trial Act

Defendant sought dismissal of the bribery and wire fraud counts under the Speedy Trial Act because the indictment was not returned within 30 days of the filing of the complaint originally charging these two offenses.  The magistrate judge rejected the argument.  She was correct to do so.

The Speedy Trial Act does require an indictment to be returned within 30 days, but the

4

triggering event starting the 30 day clock is the "the date on which [the defendant] was arrested or served with a summons" in connection with the complaint, 18 U.S.C. § 3161(b), not the date the complaint was filed with the court, see, e.g., United States v. Bloom, 865 F.2d 485, 490-91 (2d Cir. 1989) (agreeing with other circuits that the mere filing of a federal complaint without concurrent action depriving a defendant of liberty for the purpose of facing charges is insufficient to trigger the Speedy Trial Act's timing provisions). In the present case, defendant makes no showing that he was arrested or served with a summons in connection with the complaint more than 30 days prior to August 14, 2007, the date the indictment was filed. (R. 5.) In fact, according to the court's docket, the complaint in this case was filed on July 30, 2007 (R. 1), less than 30 days prior to the return of the indictment. Defendant made his initial appearance on the complaint on July 30, 2007 (R. 2), also less than 30 days prior to the return of the indictment. Thus, there was no violation of § 3161(b).

In his objections, defendant contends that the court's records reveal that the complaint was filed on May 10, 2007. What the docket shows is that the magistrate judge signed the complaint on May 10, but it was not filed until July 30. In any event, as discussed above, even if the complaint could be considered filed as of May 10, it is undisputed that defendant was not arrested or served with process in connection with the complaint prior to July 30. Only such action triggers the 30 day time period under the Speedy Trial Act.[4] Defendant also contends in his objections that this prosecution is a political "hack job." (Def.'s Objections at 5-6.) These types of arguments are not properly raised under the Speedy Trial Act. Finally, United States

_____

[4]With the reply brief in support of his objections, defendant includes a copy of a press release from the state Attorney General dated May 10, 2007, and a newspaper article discussing the case dated May 11, 2007. (Def.'s Reply Br. in Support of Objections [R. 27] Ex. B & C.) Such publicity does not trigger rights under the Speedy Trial Act.

5

v. Gaskin, 364 F.3d 438, 455 (2d Cir. 2004), which defendant cites in his objections, lends defendant no support.  In that case, the court noted that the dismissal remedy contained in § 3162(a)(1) has very limited application and is triggered only by a specific violation of the Speedy Trial Act's terms.  Id. at 451.  No such violation has been shown here.  Therefore, for these reasons and those stated by the magistrate judge, the motion to dismiss under § 3162(a)(1) of the Speedy Trial Act must be denied.

**B.    Sufficiency of the Indictment**

Under Fed. R. Crim. P. 7(c)(1), the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  The indictment is generally sufficient if it: "(1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense."  United States v. Ramsey, 406 F.3d 426, 429 (7th Cir. 2005).

At the pre-trial stage, "the indictment ordinarily should be tested solely by its sufficiency to charge an offense, regardless of the strength or weakness of the government's case."  United States v. Risk, 843 F.2d 1059, 1061 (7th Cir. 1988).  It is well-settled that a defendant may not, via Rule 12(b), challenge the sufficiency of the evidence of his guilt.  See, e.g., United States v. George, 403 F.3d 470, 472 (7th Cir.), cert. denied, 546 U.S. 1008 (2005); Risk, 843 F.2d at 1061; see also Fed. R. Crim. P. 12(b)(2) (stating that the court must be able to decide pre-trial motions "without a trial of the general issue").  In other words, there is no summary judgment analog in criminal cases.  See United States v. Ziong, No. 06-CR-72, 2006 WL 3025651, at *2 (W.D. Wis. July 7, 2006) (collecting cases); see also United States v. Yasak, 884 F.2d 996, 1001 (7th Cir. 1989) ("A motion to dismiss is not intended to be a 'summary trial

6

of the evidence.'"). With these concepts in mind, I turn to defendant's specific arguments for dismissal of the indictment in this case, all of which the magistrate judge rejected.

### 1. State Confidentiality and Open Records Law

In his motion, defendant first relied on Wisconsin state law as a basis for dismissal. The indictment alleges that, as part of his scheme to defraud, defendant shared bid information with a prospective buyer, contrary to his duty to keep such information confidential. (Indictment [R. 5] at 2.) Defendant argued that bid documents are covered under Wisconsin's Open Records Law; thus, he argued that his disclosure of them cannot constitute a crime.[5] In his objections, defendant further contends that the magistrate judge's reliance on state statutes governing the conduct of brokers to define a duty he allegedly violated by disclosing such information results in the creation of a federal common law crime, contrary to United States v. Bloom, 149 F.3d 649, 653 (7th Cir. 1998). Finally, he contends that state law governing the conduct of brokers also permitted his disclosure of competing bid information.

In order to resolve this motion, it is necessary to first clarify the crime with which defendant is charged. Defendant is charged with "honest services" wire fraud pursuant to 18 U.S.C. § 1346. Section 1346 provides that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." In order to provide some limitation on such prosecutions, the Seventh Circuit requires that the "honest services" defendant misuse his position or office for "private gain." See, e.g., United Sates v.

_____

[5]Defendant contends that this argument completely disposes of count two, the wire fraud count, and count three, which alleges a false statement pertaining to the disclosure. He further contends that the argument destroys an integral part of the "corruptly" element of count one. (Def.'s Mem. in Support of Pre-trial Motions [R. 14] at 5.) I specifically address defendant's claims as to counts one and three later in this decision.

7

Thompson, 484 F.3d 877, 882 (7th Cir. 2007) (citing Bloom, 149 F.3d at 655). In the present case, the indictment alleges that defendant solicited a "kickback" from the broker with whom he shared confidential bid information (Indictment at 2); kickbacks and bribes are classic examples of "private gain" under Seventh Circuit law. See Thompson, 484 F.3d at 883 (collecting cases). Thus, the indictment sufficiently alleges private gain.

The indictment further alleges that defendant misused his position and violated his duties to the state of Wisconsin by seeking a kickback, disclosing the terms of proposals submitted by competing buyers and seeking compensation from an entity other than the state. (Indictment at 2.) In her recommendation, the magistrate judge stated that various provisions in Wis. Stat. § 452.133, which governs the conduct of real estate brokers, codify such duties, including the duty to keep confidential certain information, loyally represent a client's interests and accept payment from any person other than the client only with the written consent of all parties to the transaction. (Recommendation [R. 23] at 7-8.)

Defendant's contention that a federal court may not look to such state rules to define the scope of the "honest services" defendant's duty to his employer or principal is simply wrong. Bloom does not hold that such reliance impermissibly creates a common law crime. As the Seventh Circuit recently stated:

> The argument that state law is always irrelevant in determining the scope of a fiduciary duty, the breach of which may give rise to a deprivation of honest services, is foreclosed by United States v. Bloom, 149 F.3d 649 (7th Cir.1998). Bloom makes clear that state laws are useful for defining the scope of fiduciary duties, and that what distinguishes a mere violation of fiduciary duty from a federal fraud case is the misuse of one's position for private gain.

United States v. Segal, 495 F.3d 826, 834 (7th Cir. 2007); see also United States v. Hausmann, 345 F.3d 952, 956 (7th Cir. 2003) (relying in part on state rules of attorney conduct

8

to define the scope of the defendant-lawyer's fiduciary duty to his clients). The present indictment sufficiently alleges that defendant violated his duties to the state for private gain; it is therefore sufficient to state honest services fraud. Defendant's complaint that the indictment contains only a "bare legal conclusion" that the bids were to be kept confidential reflects a misunderstanding of the purpose of an indictment. (Def.'s Reply Br. in Support of Objections at 4.) The indictment "need not exhaustively recount the facts surrounding the crime's commission." United States v. Agostino, 132 F.3d 1183, 1191 (7th Cir. 1997). "'Generally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished.'" Id. (quoting United States v. Hinkle, 637 F.2d 1154, 1157 (7th Cir.1981)). In other words, bare legal conclusions are generally all that is required.

Defendant's contention that the state Open Records Law permitted (or perhaps required) his disclosure of bid information, thus compelling dismissal of the indictment, also fails. First, it is far from clear that Wisconsin's Open Records Law permitted/required defendant's alleged disclosure. The government notes that Wis. Stat. § 19.36(1) provides an exception from the Open Records Law for those records specifically exempted from disclosure by other state laws. The government then cites Wis. Stat. § 16.75(2m)(f) ("In opening, discussing and negotiating proposals, the department may not disclose any information that would reveal the terms of a competing proposal.") as an exception applicable in this case. (Govt.'s Resp. to Def.'s Objections [R. 26] at 13.) Defendant counters that § 16.75 pertains only to "purchasing," not to "selling," requires the lowest price (not the highest, as he was required to seek), and sets forth procedures for sealed bids that were not followed here. However, defendant provides no case law supporting his argument that this statutory exception

9

to disclosure did not apply to the sale of the state building at issue. More fundamentally, defendant fails to show that the Open Records Law applied to him. He relies on Wis. Stat. § 19.36(3), which provides that an "authority shall make available for inspection and copying under s. 19.35(1) any record produced or collected under a contract entered into by the authority with a person other than an authority to the same extent as if the record were maintained by the authority." As defendant notes, Wisconsin courts construing this provision have held that public agencies may not avoid the disclosure requirements of the Open Records Law by having outside agents or contractors maintain custody of their records. See Journal/Sentinel, Inc. v. School Bd. of School Dist. of Shorewood, 186 Wis. 2d 443, 453 (Ct. App. 1994). But the Wisconsin court of appeals has also held that the agency, not the contractor, is the "authority" responsible for disclosing such records. See WIREdata, Inc. v. Village of Sussex, 298 Wis. 2d 743, 767-71 (Ct. App. 2007), reviewed granted, 737 N.W.2d 431 (Wis. 2007) (holding that even when municipalities contract out maintenance of records they remain the responsible "authorities" under the Open Records Law, and that even when independent contractors have custody of public records they do not fit within the definition of "authority" under the Law). Thus, defendant's claim that the Open Records Law required him, an outside contractor, to disclose information may be erroneous.

Second, to the extent that defendant is claiming that his understanding of the requirements of state law, including the Open Records Law, provides a defense to the charge (e.g, by challenging his intent to defraud or otherwise contesting mens rea), it is one appropriately raised at trial, not by pre-trial motion. Likewise, his contention (raised for the first time in reply) that Wisconsin rules governing brokers allowed his disclosure is an issue for trial. (Def.'s Reply Br. in Support of Objections at 5-6.) Essentially, defendant is claiming that he did

10

not knowingly violate a duty or misuse his position because he believed disclosure of bid information was permitted or required by state law. As the magistrate judge noted, defendant can present his view of the nature of his duties, possibly including his understanding of the requirements of state law, as a defense at trial. For purposes of a motion to dismiss, however, his argument fails.[6] The indictment alleges misuse of position for private gain and thus is sufficient to charge an offense. Therefore, for these reasons and those stated by the magistrate judge, the motion to dismiss based on state law, including the Open Records Law, will be denied.[7]

### 2. "Agent" Under 18 U.S.C. § 666

Defendant next argued in his motion that he was not an "agent" for purposes of 18 U.S.C. § 666(a)(1)(B). Under this anti-bribery provision, an "agent" of a state or local government receiving more than $10,000 in federal grants may not corruptly solicit anything of value with the intent to be influenced or rewarded in connection with some business or

---

[6]I leave for another day the nature and scope of the evidence that may appropriately be submitted on this issue at a trial. At one point in his original motion, defendant alleged that "his information from the Department of Administration was that until a formal closed bid process was instituted, all of the data from the prospective bidders was a 'record' which could not be deemed 'confidential' as a matter of Wisconsin law under the Public Records Law." (Def.'s Mem. of Law in Support of Pre-trial Motions at 2.) I suggest that the parties consider filing appropriate motions in limine on the issue should this case proceed to trial.

[7]It is also important to note that the indictment does not allege that defendant disclosed confidential information in a vacuum. Rather, it alleges that he disclosed such information to the same broker from whom he sought a monetary kickback. Thus, the government's "entire case" is not predicated on a mere breach of confidentiality. (Def.'s Reply Br. in Support of Objections at 6; see also Def.'s Reply Br. in Support of Pre-trial Motions [R. 20] at 1-2.) Further, understood in this context, the indictment does not risk turning a mere breach of some state fiduciary duty into a federal crime. See Thompson, 484 F.3d at 882-83 (stating that § 1346 cannot be used to criminalize all mistakes by public officials or turn breaches of state law fiduciary duty into federal crimes; there must be misuse of position for improper, private gain).

11

transaction of the government or agency involving a value of $5000 or more.   See Federal Criminal Jury Instructions of the Seventh Circuit 216 (1999).  Section 666(d) defines the term "agent" as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative."  18 U.S.C. § 666(d).  Defendant claimed that as an outside contractor hired to act as a realtor for the state he did not qualify as an "agent."  (Def.'s Mem. in Support of Pre-trial Motions at 5-6, citing United States v. Ferber, 966 F. Supp. 90 (D. Mass. 1997) (citing the Restatement (Second) of Agency); and United States v. Phillips, 219 F.3d 404 (5th Cir. 2000).)

The magistrate judge noted that Congress chose to define the term "agent" itself in § 666(d), and the legislative history suggests that resort to extrinsic sources, such as the Restatement of Agency, would be improper.  (Recommendation at 9-10, citing S. Rep. No. 98-225, S.1762, at 370 (1983); United States v. Vitillo, 490 F.3d 314, 323 (3d Cir. 2007).)  The magistrate judge also distinguished Ferber and Phillips because both cases involved review of the sufficiency of the government's proof at trial that the defendant was an agent within the meaning of § 666(d); neither case concerned a pre-trial motion to dismiss the indictment. Further, in Ferber, the court relied upon the  Restatement (Second) of Agency to define the elements of an agency relationship, rather than strictly focusing on the statutory definition. Finally, the magistrate judge noted that in Vitillo the court held that an outside contractor may qualify as an agent under § 666(d), and that the indictment in that case sufficiently alleged that the defendants were agents.

I agree with the magistrate judge that defendant's motion to dismiss on this ground should be denied.  First, it is clear that an independent contractor may, as  a matter of law, be

12

an agent under § 666(d).  <u>Vitillo</u>, 490 F.3d at 323; <u>see also</u> <u>United States v.</u>
<u>Sotomayor-Vazquez</u>, 249 F.3d 1, 7-8 (1st Cir. 2001).  As <u>Vitillo</u> explained, although the term
"independent contractor" is not specifically included in the list of positions contained in §
666(d)(1), that list "is, by its own plain language, not exhaustive," <u>Vitillo</u>, 490 F.3d at 323, and
Congress intended the statute to be broadly construed, <u>id.</u> at 321 (collecting cases); <u>see also</u>
<u>Sotomayer-Vazquez</u>, 249 F.3d at 8 (stating that "an expansive definition of 'agent' is necessary
to fulfill the purpose of § 666, i.e., to protect the integrity of federal funds").  As <u>Vitillo</u> also
explained, the agent need not be someone who controls federal funds or possesses the power
to directly disburse the agency's funds.[8]  <u>Id.</u> at 323.  "According to the statutory definition, an
'agent' is merely a person with authority to act on behalf of the organization receiving federal
funds, and can include, inter alia, an 'employee,' 'officer,' 'manager' or 'representative' of that
entity."  <u>Id.</u>[9]

---

[8]The magistrate judge correctly rejected defendant's argument that his conduct had to
pose a threat or have an adverse impact on federal funds or programs in order to be criminal.
The Supreme has specifically rejected this contention. (Recommendation at 9, citing <u>Salinas</u>
<u>v. United States</u>, 522 U.S. 52, 56-57 (1997).)  Defendant does not resurrect this argument in
his objections.

[9]I also agree with the magistrate judge's rejection of the two cases upon which
defendant relies.  <u>Phillips</u> is easily distinguished on its facts.  That case did not pertain to the
status of outside contractors.  Rather, in that case the majority found the evidence insufficient
to prove that the defendant-tax assessor was an agent of a Louisiana parish.  In so holding,
the court analyzed "the relationship between an assessor and a parish under Louisiana law,"
concluding that the defendant was not an agent of the parish as a matter of state law.  219
F.3d at 412.  The court noted that an assessor's duties were set by state law, not the parish;
that the assessor's salary was not set or paid by the parish; that the assessor received no
employee benefits from the parish; and that the tax assessor's office received no federal funds.
<u>Id.</u>  No similar showing has been made in the present case.  Further, as the magistrate judge
noted, <u>Phillips</u> pertained to the sufficiency of the evidence at trial, not the indictment.  In <u>Ferber</u>,
the alleged "agent" was a financial advisor for various public agencies.  His position is thus
more analogous to defendant's.  However, the <u>Ferber</u> court went astray by relying on the
Restatement of Agency, which requires the agent be able to "alter the legal relationships

13

Second, the present indictment sufficiently alleges that defendant was an agent under § 666. The indictment indicates that UGL Equis Corporation ("Equis") was retained by the state to act as its exclusive agent in the sale of a state building. The indictment further alleges that defendant was an independent contractor engaged by Equis to provide services in connection with the sale of the building, and that his duties and responsibilities included encouraging all prospective buyers to submit their best offers; keeping the specific terms of proposals confidential; disclosure to the state of all information material to the sale, including any personal financial interest he had; accepting payment from no outside sources related to the sale; and evaluating proposals submitted by potential buyers and making recommendations as to such proposals. Based on this recitation of duties and responsibilities, I find that the indictment sufficiently alleges that defendant was "authorized to act on behalf of" the state in connection with the sale of this building, a transaction involving more than $5000. As the magistrate judge noted, the government will be required to prove that defendant was an agent at trial; defendant may contest that evidence; but for purposes of defendant's motion to dismiss, I find that the indictment sufficiently alleges that he was an agent under § 666.

### 3.    Corrupt Payment/Bona fide Compensation

Defendant next argued that the alleged "kickback" referred to in the indictment represented "an incipient agreement between two brokers as to how they would split a portion of the 4.3% commission." (Def.'s Mem. in Support of Pre-trial Motions at 6.) He noted that §

---

between the principal and third parties and the principal and the agent herself." 970 F. Supp. at 100. Relying on this requirement, the Ferber court held that because the defendant merely provided advise or recommendations, he was not an agent. As discussed in the text, § 666 contains its own definition of agent, one not dependent on extrinsic sources such as the Restatement. In any event, Ferber also pertained to the sufficiency of the evidence at trial, not the sufficiency of the indictment.

666(c) excludes from the statute's reach "bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666(c). Defendant further argued that the indictment failed to allege sufficient facts to show that he acted "corruptly" under § 666(a)(1)(B). He claimed that the "kickback" was encompassed within the 4.3% commission the state was bound to pay, meaning no harm could come to the state from his conduct, and that he breached no duty of confidentiality or disclosure of any personal financial interest. He concluded that because the indictment did not allege his failure to seek the highest bidder, it did not properly allege a violation of § 666. The magistrate judge rejected both contentions, and I again agree with her.

First, defendant is free to argue at trial that he did not solicit an improper kickback but rather sought to lawfully split the commission on the sale of the building. But he is not, on a motion to dismiss, entitled to a summary ruling on his version of the facts. The indictment alleges that he corruptly solicited something of value, i.e. a kickback, in return for steering the sale to a particular buyer. It will be up to the government to prove the charge at trial, but for present purposes the indictment sufficiently alleges the crime. Likewise, defendant may at trial argue that the solicited payment was legitimate under § 666(c), see United States v. Urlacher, 979 F.2d 935, 938 (2d Cir. 1992), but defendant provides no authority for the proposition that the government must, in the indictment, specifically allege the inapplicability of the exception to liability under § 666(c).[10] In any event, read in a common-sense manner, the indictment

_____

[10]Defendant's citation of United States v. Warner, 292 F. Supp. 2d 1051 (N.D. Ill. 2003) and Bloom, 149 F.3d 649 in this portion of his argument is confusing. (Def.'s Objections at 9; Def.'s Reply Br. in Support of Pre-Trial Motions at 5-6.) These are not § 666 cases but rather honest services fraud cases under § 1346. United States v. Mills, 140 F.3d 630 (6th Cir. 1998), which defendant also cites (Def.'s Objections at 9; Def.'s Br. in Support of Pre-trial Motions at 7) also sheds no light on the issue. That case addressed whether salaries paid to deputy

15

clearly conveys the notion that the "kickback" defendant solicited was not bona fide income. See United States v. Palumbo Bros., Inc., 145 F.3d 850, 860 (7th Cir. 1998) ("The indictment must be read to include facts which are necessarily implied and construed according to common sense.") (internal quote marks omitted). The indictment alleges that defendant sought the payment in connection with steering the sale to the client of the broker from whom the payment was solicited, and that defendant sought payment in a form that would allow him to conceal it from Equis and the state.[11]

Second, there is no requirement that the governmental agency be financially harmed. See Federal Criminal Jury Instructions of the Seventh Circuit 216 (1999) ("A person acts corruptly when that person acts with the understanding that something of value is to be offered or given to reward or influence him/her in connection with his/her [organizational] [official] duties."). The present indictment, by alleging that defendant solicited a kickback (in a form he could conceal from the state) in exchange for steering the sale to a particular buyer (Indictment at 2), sufficiently alleges that defendant acted "corruptly."

─────────────────────

sheriffs who obtained their positions via bribery should be considered in establishing the $5,000 transactional valuation. Finally, United States v. Hurtgen, No. 05-CR-408, 2007 WL 869558 (N.D. Ill. Mar. 20, 2007), to which defendant also directs my attention in his objections, also has nothing to do with § 666. Aside from the fact that it concerned a kickback scheme, it is difficult to see how Hurtgen bears on the present case.

[11]In his objections, defendant states that the term "kickback" is not defined, and that if one substitutes the word "payment" for "kickback" it becomes clear that no crime is alleged. (Def.'s Objections at 8-9.) However, defendant ignores the fact that in charging count one the indictment mirrors the language of the statute, which is generally sufficient. See Agostino, 132 F.3d at 1189. As discussed in the text, defendant is free to show the jury that he did not solicit a kickback but rather engaged in business-as-usual negotiation with another broker, but as the government notes, that is not what the indictment alleges.

16

### 4.    Wire Fraud Offense

Next, defendant argued that the wire fraud count should be dismissed because only public officials or employees can be prosecuted under § 1346 and "honest services" fraud is not a legally viable theory of prosecution under McNally v. United States, 483 U.S. 350 (1987). (Def.'s Mem. in Support of Pre-trial Motions at 9.)   As the magistrate judge noted, both contentions are wrong.   The honest services theory of mail and wire fraud may be applied to private citizens, see, e.g., Hausman, 345 F.3d at 956 (applying the theory to a private attorney), and in § 1346 Congress re-instated the honest services theory McNally had disapproved, see, e.g., Cleveland v. United States, 531 U.S. 12, 19-20 (2000); Bloom, 149 F.3d at 655.

Apparently accepting that § 1346 effectively over-ruled McNally, in his objections defendant presents a different argument based on McNally, as that case is discussed in Bloom.   He contends that § 1346 creates no new theory of liability, i.e. no liability for events that would not have been crimes under McNally.   He then argues that for liability to attach there must be some sort of personal gain to which the defendant had no legitimate entitlement, which count two fails to allege.   (Def.'s Objections at 10.)   I disagree.   The indictment alleges that defendant sought a kickback, a classic form of private gain under Seventh Circuit law.   See, e.g., Thompson, 484 F.3d at 883; Bloom, 149 F.3d at 655.   Defendant also appears to claim that because the specific use of the wires alleged in count two involved his disclosure of the bid proposal of a competing buyer (rather than a conversation about private gain), the indictment is deficient. (Def.'s Objections at 10.)   But the defendant's use of the mail or wires in a fraud case need not relate to an indispensable aspect of the scheme; it may be merely incident to an essential part of the scheme or a step in the plot.   See, e.g., United States v. Brocksmith, 991 F.2d 1363, 1368 (7th Cir. 1993).   Thus, it is irrelevant that defendant's use of

17

the wire did not directly pertain to private gain.  Defendant further argues that as a broker he was entitled to some portion of the commission for the sale of the building, and that this cannot be the sort of private gain which results in criminal liability.  (Def.'s Objections at 10.)  Again, defendant may argue at trial that he was entitled to whatever payments he solicited, but the indictment sufficiently alleges fraud.  Finally, defendant argues that the magistrate judge missed the important point that he is an independent contractor, not a public official or employee of Equis.  Defendant cites no authority for the proposition that such labels are dispositive in an honest services cases, and I have found none.  Cf. Hausman, 345 F.3d at 955-56 (applying § 1346 to a private attorney who deprived his clients of the right to honest services).[12]

### 5. False Statements to FBI

Finally, defendant moved to dismiss the § 1001 charges in counts three and four of the indictment.  The elements of a § 1001 violation are (1) the defendant made a false statement;

---

[12]In his rely brief in support of his objections, defendant argues that the government's case fails because there is no allegation of "low balling" any of the competing parties to the detriment of the seller, and because the total broker commission being paid by the state was the same regardless of his conduct.  (Def.'s Reply Br. at 1-2.)  Defendant appears to misunderstand the nature of an honest services case.  The government does not have to prove that the state lost money in order to prove its case; rather, it must show that defendant misused his position for private gain (derived from some other source).  Thus, defendant's arguments pertaining to the legitimacy of "fee splitting" (Id. at 6-8) also do not demonstrate the insufficiency of the indictment.  Defendant may argue to the jury that whatever payment he discussed with the broker was legitimate compensation through proper channels and not improper private gain.  See Thompson, 484 F.3d at 882-84.  Finally, defendant's argument (also raised for the first time in the reply in support of the objections) that his conversation with the broker never culminated in an actual outside payments fails.  (Def.'s Reply Br. at 7.)  The wire fraud statute punishes a scheme, not its success, see, e.g., Pasquantino v. United States, 544 U.S. 349, 371 (2005); United States v. Blitz, 151 F.3d 1002, 1011 (9th Cir.1998).  (I also note that the anti-bribery statute covers the solicitation of a bribe as well as it's receipt.  See 18 U.S.C. § 666(a)(1)(B).)

(2) the defendant knew the statement was false; (3) the statement was material; (4) the defendant made the statement knowingly and willfully; and (5) the statement was made in a matter within the jurisdiction of the executive branch of the government of the United States. See Federal Criminal Jury Instructions of the Seventh Circuit 240 (1999). I address the sufficiency of each count in turn.

### a. Count Three

In count three, the government alleges that on May 10, 2007, defendant falsely told the FBI that he never provided prospective buyers with specific bid information from other prospective buyers. (Indictment at 5.) As to this count, defendant argued that because the bid information he allegedly disclosed was covered by the Open Records Law, any statement he made to the FBI about such disclosure cannot be "material," whether factually accurate or not, because it was not a criminal act to disclose such information. (Def.'s Mot. to Dismiss [R. 12] at 3.) He further argued that count three is a lesser included offense of count two, the wire fraud charge. (Id. at 4.) The magistrate judge correctly rejected both arguments.

First, as previously discussed in this decision, the state Open Records Law provides no basis for pre-trial dismissal of the indictment. It is far from clear that the Law even applied to defendant, much less that it permitted or required the alleged disclosure at issue. Moreover, defendant cites no authority for the proposition that a statement is material only if it pertains to an underlying criminal act or some element thereof. Rather, a statement is material if it had the effect of influencing the action of the agency, or was capable of or had the potential to do so. Federal Criminal Jury Instructions of the Seventh Circuit 245 (1999). The cases make clear that a defendant can be convicted of making false statements about conduct that has not, itself, been proven criminal. See, e.g., United States. v. Libby, 429 F. Supp. 2d 27 (D.D.C.

19

2006); see also Brogan v. United States, 522 U.S. 398, 400-01 (1998) (holding that § 1001 covers false statements of any kind). As the government acknowledges, it will at trial have the burden of convincing the jury that defendant's alleged statements were material. For present purposes, though, the indictment sufficiently alleges a crime.

Second, count three is not a lesser included offense of count two. A lesser offense is necessarily included in a greater offense only "if its elements are a subset of the elements of the charged offense. An offense cannot be 'lesser included' if it contains an element not required by the greater one." United States v. Murphy, 406 F.3d 857, 861 (7th Cir. 2005) (internal citations omitted). As the magistrate judge explained, the elements of counts two and three do not overlap in this fashion, and count three (the putative lesser offense) requires proof of an element – a materially false statement concerning a matter within the jurisdiction of the executive branch of the government of the United States – that count two (the putative greater offense) does not.

### b. Count Four

In count four, the government alleges that on May 18, 2007, defendant falsely told the FBI that he never suggested to the broker that the broker pay him directly in cash or by check made out to a company defendant controlled. (Indictment at 6.) Defendant argued that this statement was made during a de-briefing with the government, and the terms of his proffer agreement with the government forbid the government to use such statements as the basis for a criminal charge. He further claimed that what he actually said was that the broker (rather than he) suggested the method of payment, and that such statement is not material. The magistrate judge again correctly rejected both arguments.

First, it is undisputed that the proffer agreement permitted the government to use

20

defendant's statements against him should it determine that he provided false information. (Govt.'s Consolidated Resp. to Def.'s Pre-trial Motions [R. 19] Ex. 1.)  Second, defendant's arguments as to the materiality of his May 18 statements (which depend in part on facts outside the four corners of the indictment) are properly presented to the jury, not the court on a motion to dismiss.  See United States v. Gant, 119 F.3d 536, 538-39 (7th Cir. 1997) (stating that the question of materiality for prosecutions under 18 U.S.C. § 1001 is for the jury to decide).

In his objections, defendant argues that the magistrate judge erred in finding the indictment sufficient as to count four.  He asks how his statement that he "agreed to accept" rather than that he "solicited" the method payment could be material.  Again, defendant relies on facts outside the four corners of the indictment in making this argument.  In any event, this is a question properly presented to the jury, which will have to decide the factual issue of materiality.  The indictment, as a matter of law, properly alleges this element.

### III.  CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 23) is **ADOPTED**, and defendant's motions to suppress (R. 10) and dismiss (R. 12) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 10th day of December, 2007.


/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

21