# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                                **Case No. 07-CR-219**

**LARRY LUPTON**
    **Defendant.**

## DECISION AND ORDER

Defendant Larry Lupton faces trial on charges of bribery, 18 U.S.C. § 666(a)(1)(B), wire fraud, 18 U.S.C. §§ 1343 & 1346, and making false statements to an FBI agent, 18 U.S.C. § 1001. In a nutshell, the government alleges that defendant, retained by the state of Wisconsin to act as a real estate broker in connection with the sale of a state building, executed a scheme to defraud and violated § 666 by sharing confidential bid information with and soliciting a kickback from the broker for an interested buyer, then lied to the FBI about his actions. I previously denied defendant's motions to suppress recorded conversations between defendant and the broker and to dismiss the indictment. Defendant has now filed three motions in limine. I address each in turn.

**I.**

In his first motion, defendant seeks exclusion of recorded conversations and correspondence in which he presented or shared competing bid proposals. He cites no federal statute or rule making such evidence inadmissible but rather relies on Wis. Stat. § 452.01, which, he contends, expressly authorizes such conduct as a regular part of "negotiation" by a

broker.[1]

Section 452.01 defines the term "broker" as any person who, for another person and for commission, money, or other thing of value, negotiates or offers or attempts to negotiate a sale, exchange, purchase or rental of real estate. Wis. Stat. § 452.01(2)(a). The statute defines the term "negotiate" as providing to a party assistance in developing a proposal or agreement relating to a transaction, including acting as an intermediary by facilitating or participating in communications between parties related to the parties' interests in a transaction; completing, when requested by a party, appropriate forms or other writings to document the party's proposal consistent with the party's intent; and presenting to a party the proposals of other parties to the transaction and giving the party a general explanation of the provisions of the proposal. Wis. Stat. § 452.01(5m). Finally, the statute defines the term "party" as a person seeking to engage in a transaction. Wis. Stat. § 452.01(5r).

Defendant contends that, based on § 452.01, his sharing of the terms of the various proposals was within the law and not evidence of corrupt conduct under 18 U.S.C. § 666 or a misuse of his position under 18 U.S.C. § 1346. He further contends that, pursuant to Wis. Admin. Code § RL 24.12, only certain documents, such as offers to purchase, exchange agreements and option contracts must be kept confidential; the letters of intent at issue in this case are not entitled to confidential status. He concludes that the government should not be permitted to present statutorily authorized conduct as evidence of a breach of his duties to the state.

---

[1]Defendant does state that "the mere fact of clandestine recording implies to the jury some sort of unsavory or sordid conduct." (Def.'s Mem. in Supp. of First Mot. in Limine at 1.) However, secretly recorded conversations are admitted in federal court all the time, and defendant cites no evidentiary basis for excluding these communications.

2

These arguments are in large part a rehash of those defendant presented in his earlier motion to dismiss the indictment for failure to state an offense. They fare no better as a motion in limine.

As I indicated in my previous decision, in order to establish honest services wire fraud, the government must prove that defendant misused his position for private gain. United Sates v. Thompson, 484 F.3d 877, 882 (7th Cir. 2007) (citing United States v. Bloom, 149 F.3d 649, 655 (7th Cir. 1999)). In the present case, the government alleges that defendant misused his position and violated his duties to the state of Wisconsin by soliciting a kickback, disclosing the terms of proposals submitted by competing buyers to the broker from whom he sought the kickback and seeking compensation from an entity other than the state. (Indictment at 2.) Kickbacks and bribes are classic examples of "private gain," see id. 484 F.3d at 883 (collecting cases), and as the magistrate judge explained in her recommendation on the motion to dismiss and as the government sets forth in its response to the instant motion in limine the duties of brokers are set forth in Wis. Stat. § 452.133. That statute codifies the duty to keep certain information confidential, loyally represent a client's interests and accept payment from any person other than the client only with the written consent of all parties to the transaction. Federal courts may look to such state rules to define the scope of the "honest services" defendant's duty to his employer or principal, see, e.g., United States v. Hausmann, 345 F.3d 952, 956 (7th Cir. 2003), but such rules are neither a necessary or a sufficient condition for an honest services conviction. As the Seventh Circuit explained in United States v. Segal, 495 F.3d 826, 834 (7th Cir. 2007), "state laws are useful for defining the scope of fiduciary duties, [but] what distinguishes a mere violation of fiduciary duty from a federal fraud case is the misuse of one's position for private gain."

3

Whether defendant, in fact, sought to misuse his position for private gain is an issue the jury must decide based on all the evidence; it is not a matter appropriate to summary disposition by the court. Thus, I must (again) rejected defendant's argument that the indictment fails to allege an offense in light of the state laws governing brokers. It follows that the government may present evidence supporting the indictment's allegations, including the recorded communications.

I also again note that the government does not allege that defendant disclosed confidential information in a vacuum. Rather, it alleges that he disclosed such information to the same broker from whom he sought a monetary kickback, a payment (the government claims) that he further sought to conceal from the parties to the transaction. Thus, the government's case is not predicated on a mere breach of confidentiality. The e-mails and recorded conversations in which defendant allegedly revealed competing proposals as part of this alleged scheme to defraud the state for private gain are admissible under Fed. R. Evid. 401 & 402.

**II.**

In his second motion, defendant seeks exclusion as evidence recorded conversations he had with the broker about "potential options for fee-splitting." (Def.'s Second Mot. in Limine at 1.) He contends that introduction of this evidence would be prejudicial because it was not improper under the listing agreement with the state and applicable state law governing brokers for him to have engaged in these conversations, the secret recordings will give the jury the impression that something sordid was occurring, and use of the term "kickback" to describe lawful conduct would be prejudicial. Again, defendant cites no federal statute or rule making such evidence inadmissible. Presumably, he means to argue that such evidence is not

4

relevant, Fed. R. Evid. 401, 402, or would be unduly prejudicial, Fed. R. Evid. 403. His argument fails.

Defendant notes that the broker agreement at issue in this case allowed the sharing of a commission, and that Wis. Stat. § 452.19 permits "fee-splitting." Defendant further notes that, while Wis. Stat. § 452.133(3) prohibits a broker from <u>accepting</u> a fee from a person other than the client without the written consent of all parties, in this case no money actually changed hands, and that state regulations permit a broker to delay obtaining written consent until the offer to purchase is drafted. However, defendant is not charged with breach of contract or violation of state laws governing brokers; as I explained in my earlier decision denying defendant's motion to dismiss, the federal statutes defendant is alleged to have violated do not require that money actually change hands. The wire fraud statute punishes a scheme, not its success, <u>see, e.g.</u>, <u>Pasquantino v. United States</u>, 544 U.S. 349, 371 (2005); <u>United States v. Blitz</u>, 151 F.3d 1002, 1011 (9th Cir.1998), and the anti-bribery statute covers the solicitation of a bribe as well as it's receipt, <u>see</u> 18 U.S.C. § 666(a)(1)(B). Defendant may present to the jury evidence that he intended to seek appropriate consent for the payment and thus had no corrupt intent, but he provides no basis for excluding the government's evidence to the contrary.[2]

Defendant notes that any fee split with the broker would come from the 4.3% pre-set commission to be paid by the state, and then only if the state chose the broker's client. Again, as I explained in my earlier decision, the government does not have to prove that the state lost money in order to prove its case; rather, it must show that defendant misused his position for

---

[2]The government indicates that in one of the recorded conversations, defendant told the broker, "And obviously, I don't want anything in writing, you know. I don't want it [the payment] leaked back to the state or, you know, Equis per se." (Govt.'s Resp. to Def.'s Mot. in Limine at 7.)

5

private gain derived from some other source.

Defendant may argue to the jury that whatever payment he discussed with the broker was legitimate compensation through proper channels and not improper private gain. However, the government will be permitted to introduce evidence to the contrary. The recorded conversations at issue constitute relevant evidence that defendant solicited something of value, corruptly and with intent to be influenced in connection with some business or transaction, and sought to misuse his position for private gain.[3]

**III.**

Finally, defendant seeks exclusion of any expert opinion testimony on the duties and practices of real estate brokers from persons not licensed as brokers in the state of Wisconsin. Defendant contends that the duties, standards of practice and restrictions on the conduct of brokers is not a matter of common knowledge. And he notes that Fed. R. Evid. 701 and 702 prohibit testimony on matters requiring special skill or knowledge from unqualified or lay witnesses. The government responds that it will disclose any expert testimony as required by local rules but objects to any requirement that only a broker licensed in Wisconsin be permitted to offer such testimony.

Until I know what sort of expert testimony, if any, the government plans to introduce, I cannot rule on this motion. However, I will advise the parties that expert testimony about the legal duties of brokers may be improper. As the Seventh Circuit recently explained, the meaning of statutes and regulations is "a subject for the court, not for testimonial experts. The

---

[3] As with his first motion in limine, defendant does not develop any argument as to why the clandestine recording of the conversations renders them inadmissible. Nor does he develop any argument that use of the work "kickback" should be prohibited.

6

only legal expert in a federal courtroom is the judge." United States v. Caputo, Nos. 06-3612, 06-3619, 2008 WL 509177, at *6 (7th Cir. Feb. 27, 2008) (internal citation omitted).  For now, I will defer ruling on defendant's third motion in limine and take this issue up at the final pre-trial scheduled for March 7, 2008, at 1:30 p.m.

**IV.**

**THEREFORE, IT IS ORDERED** that defendant's first and second motions in limine (R. 33, 35) are **DENIED**.  I defer ruling on the third motion (R. 37).

Dated at Milwaukee, Wisconsin, this 5th day of March, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge