# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                           Case No. 07-CR-219

**LARRY LUPTON**
        **Defendant.**

## DECISION AND ORDER

The government charged defendant Larry Lupton with bribery, 18 U.S.C. § 666(a)(1)(B), wire fraud, 18 U.S.C. §§ 1343 & 1346, and making false statements to the FBI, 18 U.S.C. § 1001. The government alleges that defendant – acting as a real estate broker for the State of Wisconsin in connection with the sale of a State building – executed a scheme to defraud and violated § 666 by sharing confidential bid information with and soliciting a kickback from the broker for an interested buyer. The government further alleges that defendant lied about his conduct when interviewed by the FBI.

The government's evidence on the fraud and bribery counts is derived largely from recorded conversations between defendant and Gabriel Silverstein, the other broker, during which defendant allegedly shared bid information and solicited a payment he sought to keep secret from Equis (the company that contracted with defendant to handle the sale on behalf of the State) and the State of Wisconsin. Defendant contends that under the rules and practices applicable to brokers in Wisconsin, he did nothing wrong: the bid information was not required to be kept confidential, and the alleged kickback was merely a discussion of a potential fee split between two brokers. He seeks to introduce expert testimony in support of

his defense. Specifically, he proposes to have attorney and law professor Martin Greenberg, who specializes in real estate law, testify that it is to be expected that brokers will present competing proposals to interested parties in an effort to drive up the price; that defendant's conduct in disclosing various parties' letters of intent was appropriate; that it would not be unreasonable broker conduct for defendant to ask whether Silverstein would fee split; that it would not be unreasonable for defendant to want the results of his conversation with Silverstein on the topic of fee splitting not to be reduced to writing in order to avoid it being leaked during the State and Equis's commission re-negotiation process; and that the listing contract allowed defendant to be paid by the buyer, and defendant's conversation with Silverstein would reflect the first step in exploring that option. (Expert Witness Report [R. 42-2] at 2.)

Because I was skeptical of the admissibility of such testimony, see United States v. Caputo, 517 F.3d 935 (7th Cir. 2008), I conducted an evidentiary hearing at which Greenberg testified, then permitted the parties to brief the issue. I now exclude the proposed expert testimony.

**I.**

In Caputo, the Seventh Circuit affirmed the exclusion of expert testimony about the meaning of statutes and regulations, stating: "That's a subject for the court, not for testimonial experts. See Bammerlin v. Navistar International Transportation Corp., 30 F.3d 898, 900 (7th Cir. 1994). The only legal expert in a federal courtroom is the judge." Id. at 942. Cognizant of this limitation, defendant argues that Greenberg will not testify as a law professor or lawyer on the law but rather as someone who knows the standards of practice in brokerage. (Mar. 20, 2008 Evid. Hr'g Tr. [R. 47] at 5; Def.'s Mem. in Support of Expert Testimony [R. 48] at 6.) However, Greenberg's testimony during the hearing made clear that his opinions are based on

2

his interpretation of state statutes and regulations and the contracts in this case, not his knowledge of general broker practices. (Hr'g Tr. at 61; 70; 74.) Specifically, in response to a question from the court, Greenberg testified:

> THE WITNESS: I've made my conclusion based upon what he did compared to what the statute permits and requires him to do.
>
> THE COURT: So you're saying that as you read the statute what he did was legal under the statute.
>
> THE WITNESS: That's exactly what I've testified here today.

(Id. at 70.)[1] Therefore, because the proposed testimony essentially amounts to legal interpretation, which is the province of the court, the testimony is inadmissible under Caputo. See also Loeb v. Hammond, 407 F.2d 779, 781 (7th Cir. 1969) (declining to allow a lawyer to testify as an expert with respect to the interpretation or legal effect of a contract).

**II.**

To the extent that Greenberg testified that defendant's conversations with Silverstein were "normal with respect to the way brokers conduct their business" (Hr'g Tr. at 44), defendant fails to establish Greenberg's "knowledge, skill, experience, training, or education" to offer such an opinion under Fed. R. Evid. 702.[2] Greenberg's expertise is in the law of real estate; he has

---

[1] Defendant argues that it was only on cross-examination and the court's questions that Greenberg went into legal areas. However, the government's and the court's questions merely clarified the basis for the opinions Greenberg provided on direct examination.

[2] Rules 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The Seventh Circuit has interpreted the Rule to set forth two essential requirements for expert testimony: "(1) the expert must be qualified, and (2) the subject matter of the expert's testimony must consist of

3

not been a licensed broker himself for more than thirty years (Id. at 61-63); and he admitted to having no personal experience in the type of transaction at issue in this case or under the new state laws upon which he based his assessment of defendant's conduct (Id. at 63-68).

Further, defendant fails to establish that Greenberg's opinions in this case are based upon sufficient facts or data, or are the product of reliable principles and methods, as required by Rule 702. Again, the hearing testimony reveals that Greenberg's opinions are the result of his review of state statutes and regulations, some articles discussing recent changes in state law, and the contract documents in this case. (Id. at 70.) This is not the stuff of permissible expert opinion testimony. Greenberg also admitted that his conclusions rested on the assumption that defendant intended to later disclose any side deal with Silverstein to Equis and the State; absent such disclosure, his opinion as to the legality of defendant's conduct would be different. (Id. at 83-85; 90.) Therefore, for all of these reasons, the testimony is not admissible under Rule 702.

**III.**

Defendant argues that because real estate terms and standards are not a matter of common knowledge expert testimony would assist the jury. (Def.'s Mem. in Support of Expert Testimony at 4.) Even if that is true, it does not follow that Greenberg's testimony that defendant acted "reasonably" or "lawfully" under such standards is admissible under Rule 702.[3] Defendant relies on United States v. Brown, 7 F.3d 648 (7th Cir. 1993), in which the court

---

specialized knowledge that will be helpful or essential to the trier of fact in deciding the case." United States v. Lee, 502 F.3d 691, 698 (7th Cir. 2007), cert. denied, 128 S. Ct. 1316 (2008).

[3]Defendant plainly wants Greenberg to do more than explain real estate terms; he wants this witness to opine as to the appropriateness of his conduct as a broker.

4

found no abuse of discretion in the district judge's admission of expert testimony about the practices of drug dealers, specifically on whether a quantity of crack cocaine was consistent with personal use as opposed to distribution. The court noted that a qualified expert in a criminal case is not precluded from suggesting inferences to be drawn from the facts, including inferences that embrace an ultimate issue, provided the expert does not express a direct opinion concerning whether the defendant did or did not have the mental state or condition constituting an element of the crime charged. Id. at 651. Defendant's proposed expert testimony fails under this test. As Brown recognizes, there is a fundamental difference between expert testimony on a factual matter (such as how drug dealers typically package or store their product), which indirectly bears on the issue of the defendant's intent (i.e., to distribute the drugs or use them himself), and testimony such as Greenberg's that a defendant's conduct was reasonable or appropriate as a matter of law.

Defendant also cites United States v. Love, 336 F.3d 643 (7th Cir. 2003), but that case is likewise distinguishable. In Love, the court on plain error review upheld the admission of expert testimony "about the common practices of drug dealers and how typical drug sales occur." Id. at 647. Love does not stand for the proposition that certain categories of expert testimony must be admitted, and defendant's proffered testimony is different. Greenberg proposes to testify that defendant's specific conduct was legal, rather than about the typical practices of other brokers; in any event, Greenberg admitted having little or no experience in how brokers act under the new state laws he cited in his testimony.

**IV.**

Finally, I am concerned that the proposed testimony may, by forcing a detour into matters of state law, confuse rather than enlighten the jury in reaching a verdict under §§ 1346

5

and 666. See Fed. R. Evid. 403 (providing that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of confusion of the issues). In order to establish honest services fraud under § 1346, the government must prove that the defendant misused his position for private gain. United Sates v. Thompson, 484 F.3d 877, 882 (7th Cir. 2007) (citing United States v. Bloom, 149 F.3d 649, 655 (7th Cir. 1999)). The instant indictment alleges as "private gain" defendant's solicitation of a kickback, a classic example of private gain. See United States v. Sorich, 523 F.3d 702, 707 (7th Cir. 2008) (stating that "in most honest services cases, the defendant violates a fiduciary duty in return for cash-kickbacks, bribes, or other payments"). The indictment further alleges that defendant misused his position and violated his duties to the State of Wisconsin and Equis by soliciting the kickback, disclosing the terms of proposals submitted by competing buyers to the broker from whom he sought the kickback, and seeking compensation from an entity other than the State. The indictment mentions no specific state statutes or regulations codifying such duties; it was only in response to defendant's motions to dismiss that the government cited a Wisconsin statute on the obligations of brokers.

Federal courts may look to state statutes or regulations in determining the scope of an honest services defendant's duty to his employer or principal, see, e.g., United States v. Hausmann, 345 F.3d 952, 956 (7th Cir. 2003) (citing state ethical rules for attorneys), but the Seventh Circuit has never held that proof of a state law violation is necessary in an honest services case, see Sorich, 523 F.3d at 712 ("[W]e have never held that only state law can supply a fiduciary duty between public official and public or between employee and employer in honest services cases."); see also United States v. Segal, 495 F.3d 826, 834 (7th Cir. 2007), cert. denied, 2008 WL 752539 (U.S. Apr 21, 2008) (noting that "state laws are useful for

6

defining the scope of fiduciary duties, [but] what distinguishes a mere violation of fiduciary duty from a federal fraud case is the misuse of one's position for private gain"). Rather, the jury must find that the defendant possessed the intent to deprive the public or his employer of his honest services.[4] See United States v. Hasner, 340 F.3d 1261, 1269-70 (11th Cir. 2003) (holding that proof of a state law violation is not required for a conviction of honest services fraud, and that even though the indictment in that case listed state ethics rules prohibiting self-dealing by government employees, the conviction was based not on state law but rather on the defendant's intent to deprive the public of his honest services).

Like the Eleventh Circuit in Hasner, the Seventh Circuit has expressly declined to adopt a "state law limiting principle" in honest services cases. Sorich, 523 F.3d at 712. In Hasner, the court upheld exclusion of proposed expert testimony much like that offered here, reasoning that "because a showing that Hasner complied with Fla. Stat. § 159.606 was immaterial to the conclusion of whether Hasner intended to deprive the public of his honest services, the district court did not abuse its discretion by refusing to admit expert testimony interpreting Fla. Stat. § 159.606." 340 F.3d at 1270 n.4.[5]

The same is true on the bribery count. In order to establish a violation of § 666, the

---

[4]To use defendant's terminology, the issue in the present case is not the "commercial reasonableness" of defendant's conduct or whether he acted with "reasonable care." (Def.'s Mem. in Support of Expert Testimony at 1, 3.) This is not a tort case, it is a criminal case in which the jury must find that defendant acted with the requisite criminal intent.

[5]The government has also indicated that it intends to show that defendant attempted to deprive Equis of his honest services; pursuant to his contract with Equis, defendant was not permitted to receive undisclosed, direct payments. See United States v. George, 477 F.2d 508 (7th Cir. 1973) (upholding honest services fraud conviction where the defendant violated a work rule by receiving a commission/kickback from a vendor, contrary to his duty of loyalty to the company and company rules). The government also alleges that defendant attempted to defraud Equis of property, i.e. the commission on the sale of the building.

7

government must show, inter alia, that defendant acted corruptly with the intent to be influenced or rewarded in connection with some business or transaction of the government or agency. A person acts corruptly when he acts with the understanding that something of value is to be offered or given to reward or influence him in connection with his official duties. Federal Criminal Jury Instructions of the Seventh Circuit 216 (1999). The statute does not apply to bona fide compensation paid in the usual course of business. 18 U.S.C. § 666(c).

In this case, defendant apparently intends to argue that he intended the alleged "kickback" to be a payment in the usual course of business, i.e. a legitimate fee split between two brokers. Again, the jury will have to decide, based on the recorded conversations and all of the other evidence, whether defendant acted with the requisite intent. But it would not be proper to allow an expert witness to offer a legal opinion that defendant behaved "reasonably" or that his actions conform to the rules governing real estate brokers.[6] See Woods v. Lecureux, 110 F.3d 1215, 1220 (6th Cir. 1997) (holding that testimony which does little more than tell the jury what result to reach is inadmissible and is also not helpful to the trier of fact); Torres v. County of Oakland, 758 F.2d 147, 150 (6th Cir. 1985) (stating that testimony containing a legal conclusion is inadmissible because it is not helpful to the jury and conveys legal standards to the jury, thereby invading the province of the court to determine applicable law and to instruct the jury as to that law).

---

[6]As noted above, Greenberg admitted that his testimony as to the legitimacy of defendant's conduct rested on the assumption that defendant would later fully disclose his actions and obtain the consent of the other interested parties. Greenberg conceded that if the transaction had been completed without such disclosure, defendant would have violated his obligations as a broker. (Tr. at 83-84; 90.) Thus, even if I allowed Greenberg's testimony, the jury would still have to determine whether, by his words and actions, defendant evinced the intent to defraud. And because Greenberg's testimony rests on an assumption, conceded to be without factual basis, his testimony would not ultimately be helpful to the jury.

8

**V.**

As I understand it, defendant's basic defense in this case will be that he had no intent to defraud or act corruptly. Defendant may in the course of presenting this defense testify about his understanding of how brokers behave, which may include his understanding of the law. See, e.g., United States v. Kelly, 888 F.2d 732, 743-44 (11th Cir. 1989) (holding that testimony from the defendant, an attorney, on his understanding of professional standards of conduct "was very relevant to [the defendant's] intent and state of mind"). However, I will not permit a third party legal expert to, in effect, testify that defendant's conduct was lawful. See United States v. Stewart, 433 F.3d 273, 311 (2d Cir. 2006) (affirming exclusion of expert testimony as to the legality of the defendant's conduct).[7]

I understand that testimony from a third party could carry greater weight with the jury, which may consider defendant's assertions self-serving. But the fact that testimony would be helpful to an accused does not make it admissible, and the due process right to present a defense does not include the right to present inadmissible evidence. See United States v. Scheffer, 523 U.S. 303, 308 (1998) (noting the broad latitude under the Constitution to establish rules excluding evidence from criminal trials, and that such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve); cf. State v. Jensen, 743 N.W.2d 468, 478-79 (Wis. Ct. App. 2007) (upholding trial judge's denial of defense attempt to present testimony from other witnesses as to the campaign practices among Democratic and Republican legislators, but reversing the exclusion of the defendant's own testimony on that same topic).

---

[7]To the extent that I conclude that any matters of state law are relevant to the charges, I will instruct the jury on that law.

In sum, because the proposed testimony amounts to legal interpretation, which is the sole province of the court, and because the testimony would confuse rather than enlighten the jury in its primary determination, whether defendant had the intent to defraud, I exclude it under Fed. R. Evid. 402, 403 and 702. See United States v. Serfling, 504 F.3d 672, 679 (7th Cir. 2007), cert. denied, 128 S. Ct. 1718 (2008) ("Serfling's intent is not an appropriate subject for expert testimony, and Serfling does not claim that the expert had personal knowledge regarding what Serfling knew, nor when.").

**THEREFORE, IT IS ORDERED** that the proffered expert testimony is excluded, and defendant's third motion is limine is **DENIED**.

Dated at Milwaukee, Wisconsin, this 28th day of May, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

10