# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.                  Case No. 07-CR-219

**LARRY LUPTON**
   **Defendant.**

## DECISION AND ORDER

### I. BACKGROUND

In this case, the government charged defendant Larry Lupton with bribery, 18 U.S.C. § 666(a)(1)(B), wire fraud, 18 U.S.C. §§ 1343 & 1346, and making false statements to an FBI agent, 18 U.S.C. § 1001. The government alleges that defendant, a real estate broker acting on behalf of the State of Wisconsin in connection with the sale of a State building, executed a scheme to defraud and violated § 666 by sharing confidential bid information with and soliciting a kickback from the broker for an interested buyer, then lied to the FBI about his conduct.

Defendant entered pleas of not guilty and, during the motion period set by the magistrate judge, moved to suppress recorded conversations with the other broker based on an alleged violation of state and federal wiretap laws; and to dismiss the indictment based on (A) an alleged violation of the Speedy Trial Act, (B) state open records and broker confidentiality laws, (C) the statutory definition of the term "agent" in § 666, (D) the bona fide compensation exception in § 666(c), (E) the rejection and/or limitation of the "honest services" theory of mail/wire fraud in <u>McNally v. United States</u>, and (F) the absence of any material misstatements

under § 1001. I denied all of these motions. (R. 28.) I later denied defendant's pre-trial motions in limine seeking to exclude recorded statements (R. 41) and, after a hearing, excluded his proposed expert testimony on the legal duties of brokers (R. 52). After excluding the expert testimony, I set the trial three months out to permit defendant to file an interlocutory appeal. That effort failed, and the matter was called for final pre-trial on September 5, 2008, with a September 22 jury trial scheduled to follow.

At the final pre-trial, defendant indicated that he wanted to introduce before the jury evidence that the prosecution was politically motivated. He also indicated that he might seek to present opinion evidence from an Illinois mortgage broker, Ari Glass, of a sort similar to that which I previously excluded. Concerned that these matters were not properly presented to a jury, I converted the trial date to a motion hearing to consider the admissibility of this evidence.[1]

Defendant subpoenaed to the September 22 hearing several current and/or former state political officials, apparently to attempt to show that the prosecution was politically motivated. Those officials moved to quash their subpoenas, and in a preliminary order dated September 19 I excused the witnesses but directed their counsel to appear at the September 22 hearing. I noted that requiring the witnesses to appear and testify would relieve defendant from making

---

[1] I also ordered defendant to provide a summary of the Glass testimony on or before September 12, 2008. Defendant provided no such summary and at the September 22 hearing indicated that Glass would be a fact witness only. Although Crim. L.R. 16.1(d) generally permits defense disclosure of expert testimony two days before the expert testifies, in this case I have (as the Local Rule also permits) ordered earlier disclosure. Because defendant has not provided disclosure of proposed expert testimony consistent with my order, I will not absent a showing of good cause permit such testimony now. As I have consistently indicated, because of the various issues that have arisen throughout this case, I will to the greatest extent possible require that evidentiary disputes be resolved prior to trial. I also note for purposes of the record that I have not previously ruled that all expert testimony related to the duties, practices and obligations of brokers is inadmissible. My May 28, 2008 Order was limited to the proposed expert testimony from Martin Greenberg.

2

the prima facie showing required before an evidentiary hearing may be held on a claim of selective or vindictive prosecution. See United States v. Heidecke, 900 F.2d 1155, 1160 (7th Cir. 1990).

At the hearing, I heard the arguments of counsel for defendant, the government and the witnesses. Defendant agreed that, as I stated in the September 19 order, issues of selective or vindictive prosecution were for the court, not the jury, and that he was required to make a preliminary showing before being granted an evidentiary hearing. Although he had not previously filed a motion to dismiss on this basis,[2] I afforded him one week to file his submission, with the government's response due one week later. I also permitted counsel for the witnesses a chance to respond. All parties having weighed in, the matter is now ready for resolution.

## II. DEFENDANT'S CLAIM

Defendant supports his motion to dismiss for politically selective prosecution with the affidavit of his lawyer, Joseph Owens. Owens avers that he has conducted an investigation, which has revealed facts sufficient to justify holding an evidentiary hearing. He then discusses

---

[2]On September 21, defendant filed what he called a "renewed" motion to dismiss due to "political prosecution." In a supporting memo, he took issue with the statement in my September 19 preliminary order that he had not previously filed a motion raising a selective prosecution defense. He stated that he had previously filed a motion to dismiss based on the Sixth Amendment and the Speedy Trial Act in which he argued that the prosecution was politically motivated. But that argument came in the context of arguing that the government issued a press release related to the prosecution on May 10, 2007 – ostensibly designed to prevent the sale of the State building in order to hurt the governor – but did not indict him until August 14, 2007, beyond the 30 days permitted by 18 U.S.C. § 3161(b). Nothing in that motion pointed the court to a selective/vindictive prosecution claim, which is based on the Due Process Clause, not the Sixth Amendment or § 3161. I therefore reject the contention that the instant motion is merely a renewal of an issue previously raised. This failure to timely raise the issue is alone sufficient to warrant denial of the motion.

3

the history of the proposed sale of the State building involved in this case. In January 2007, the State engaged Equis Corporation as the broker for the sale; Equis, in turn, assigned defendant to work on the project. Owens indicates that the State, via its Department of Administration ("DOA"), attempted to renegotiate Equis's commission during the bidding process and quotes an e-mail from another Equis employee complaining about the conduct of several involved DOA employees. Owens further indicates that around this same time one of the other brokers involved in the bidding process, Gabriel Silverstein, contacted the Wisconsin Department of Justice ("WDOJ") following a contact with defendant, and that during subsequent discussions with Silverstein WDOJ agents characterized defendant as seeking a "kickback" from Silverstein. The WDOJ then arranged for defendant and Silverstein's conversations to be recorded, which recordings in part form the basis for the instant fraud and bribery charges. Owens states that thereafter the DOA provided various materials related to the building sale to a WDOJ agent. Finally, Owens avers that he has learned from DOA documents and employees that a "political presence" existed complaining about the Equis commission, but that there is no indication of who decided to try to lower the commission.

Based on these facts, Owens claims that "the direct injection" of WDOJ agents into the process "to foil what at best was a $75,000 diversion of a commission undeniably owed by the State to someone, can only be explained in terms of political machination." (Owens Aff. at 6 ¶ 9.) He concludes: "The only logical goal of engaging in this massive economically destructive conduct to the State of Wisconsin by the Wisconsin Attorney General's office prior to the issuance of the indictment, would be to derail the entire transaction so as to wreak havoc with the Governor's budget." (Id. ¶ 10.) His only mention of federal prosecutors comes in the penultimate paragraph of the affidavit:

4

> If the Wisconsin Attorney General's Office and the U.S. Attorney's Office had any regard for the best interests of the State of Wisconsin and due regard for the separation of powers between the Governor's office and the Attorney General's offices, the subject transaction would have been allowed to close on schedule by June 30, 2007 and then if law enforcement sincerely believed a crime of some sort had been committed in the allocation of the comparatively insignificant sum of $75,000 (i.e., 1/4 of the one percent of the entire transaction) prosecution could then be instituted.

(Id. ¶ 11.)

## III. DISCUSSION

### A. Defendant's Claim Raises an Issue of Law

Defendant moves to dismiss based on "politically selective prosecution." Claims of vindictive or selective prosecution do not constitute "a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996). Accordingly, such claims must, as defendant now concedes, be presented via pre-trial motion and resolved by the court, not the jury. See, e.g., United States v. Abboud, 438 F.3d 554, 579-80 (6th Cir.), cert. denied, 127 S. Ct. 446 (2006); United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997); United States v. Cortez, 973 F.2d 764, 765 (9th Cir. 1992); United States v. Washington, 705 F.2d 489, 495 (D.C. Cir. 1983); United States v. Berrigan, 482 F.2d 171, 175 (3d Cir. 1973); see also United States v. Bontkowski, 865 F.2d 129, 131 (7th Cir. 1989) ("We have held that it is for the trial court, not the jury, to decide whether government conduct is so outrageous that due process bars the use of the judicial system to obtain a conviction."); United States v. Swiatek, 819 F.2d 721, 726 (7th Cir. 1987) ("All of the circuits that have considered the question have held that the issue of outrageous government conduct is not a jury question.").

5

District courts have routinely barred defendants from submitting evidence of prosecutorial motivation or misconduct to the jury (even when the case involves possible political overtones). See, e.g., United States v. Fieger, No. 07-CR-20414, 2008 WL 996401, at *1-2 (E.D. Mich. Apr. 8, 2008); United States v. Cardarella, No. 07-00007, 2007 WL 2507751, at *3 (W.D. Mo. Aug. 30, 2007); United States v. Stewart, No. 03 CR 717, 2004 WL 113506 (S.D.N.Y. Jan. 26, 2004); United States v. Cleveland, No. 96-207, 1997 WL 253124, at *3 (E.D. La. May 14, 1997); United States v. Lopez, 854 F. Supp. 57, 59-60 (D.P.R. 1994); United States v. Infelise, No. 90 CR 87, 1991 WL 251651, at *1 (N.D. Ill. Nov. 19, 1991) (Williams, J.). Consistent with this case-law, I will not permit defendant to present to the jury any such evidence.

**B.   Defendant's Claim Fails as a Matter of Law**

Turning to the merits of defendant's legal argument, I begin with the proposition that the government retains broad discretion in determining who to prosecute and what charges to bring. Wayte v. United States, 470 U.S. 598, 607-08 (1985). So long as the prosecutor has probable cause to believe that the accused committed an offense, the decision whether to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion. Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978).

The prosecutor's discretion is subject to constitutional restraints, however. Armstrong, 517 U.S. at 464. In particular, the Due Process Clause of the Fifth Amendment forbids the prosecutor from proceeding based on an unjustifiable standard such as race, religion, or other arbitrary classification (i.e., "selective prosecution"), see, e.g., id., or in retaliation for the defendant's exercise of a protected statutory or constitutional right (i.e., "vindictive prosecution"), see, e.g., United States v. Monsoor, 77 F.3d 1031, 1034 (7th Cir. 1996).

6

In order to sustain a charge of selective prosecution, the defendant must show that (1) he was singled out for prosecution while other violators similarly situated were not prosecuted; and (2) the decision to prosecute him was based on an arbitrary classification such as race, religion, or the exercise of constitutional rights. Monsoor, 77 F.3d at 1034; Jarrett v. United States, 822 F.2d 1438, 1443 (7th Cir. 1987); see also Armstrong, 517 U.S. at 465 (holding that defendant must show that the federal prosecutorial policy had a "discriminatory effect" and was motivated by a "discriminatory purpose"). In order to make out a claim of vindictive prosecution, the defendant must show that (1) the prosecutor harbored genuine animus; and (2) absent this motive, the defendant would not have been prosecuted. Monsoor, 77 F.3d at 1034; see also United States v. Cooper, 461 F.3d 850, 856 (7th Cir. 2006); United States v. Algee, 309 F.3d 1011, 1014 (7th Cir. 2002). In order to obtain discovery on a selective or vindictive prosecution claim, the defendant must present a "colorable basis" for the claim. United States v. Benson, 941 F.2d 598, 612 (7th Cir.), amended by 957 F.2d 301 (7th Cir. 1991). To obtain an evidentiary hearing, he must offer evidence sufficient to create a reasonable doubt that the government acted properly in seeking the indictment. Id.; Heidecke, 900 F.2d at 1159-60; United States v. Napue, 834 F.2d 1311, 1329 (7th Cir. 1987).

In the present case, defendant makes no effort to identify other individuals similarly situated who have not been prosecuted, see United States v. Blake, 415 F.3d 625, 627 (7th Cir. 2005), or to explain how or why the government acted based on his membership in a constitutionally protected class or his exercise of a protected right, see Armstrong, 517 U.S. at 470. Therefore, he may not proceed further with a claim of selective prosecution.

The claim fares no better analyzed as one of vindictive prosecution. Although defendant fails to cite any cases specifically addressing the issue, I will assume that a prosecutor may not

7

bring charges based on partisan political objectives.³ The problem with defendant's argument is that he fails to present any evidence as to the motives of the federal prosecutors handling this case. Instead, he presents evidence about the actions of various state officials and investigators. This is insufficient to raise even a colorable allegation of vindictive prosecution.

In certain limited situations, such as where a defendant succeeds in obtaining a reversal on appeal and the government then brings more serious charges, the court may presume vindictiveness. Cooper, 461 F.3d at 856 (citing United States v. Goodwin, 457 U.S. 368, 376 (1982)). However, such a presumption does not apply to pretrial decisions to indict "because '[a] prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution.'" Id. (quoting Goodwin, 457 U.S. at 382); see also United States v. Spears, 159 F.3d 1081, 1086 (7th Cir. 1998) (stating that "for a defendant to prove vindictiveness on the part of the government for its decision to seek an indictment, he must present objective evidence showing genuine prosecutorial vindictiveness"). Because in this case defendant attacks the pre-trial decision to indict him, vindictiveness may not be presumed.

Absent circumstances giving rise to a presumption of vindictiveness, the "defendant must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication." United States v. Jarrett, 447 F.3d 520, 525 (7th Cir.), cert. denied, 127 S. Ct. 608 (2006) (internal quote marks omitted). Only if the defendant comes forward with objective evidence of actual vindictiveness does the burden shift

---

³The theory in this case seems to be that the government went after defendant as a means of hurting Wisconsin Governor Doyle.

8

to the government to show that the motivation behind the charges was proper. Ultimately, in order to grant relief, the court must be persuaded that the defendant would not have been prosecuted but for the government's animus or desire to penalize him. Id.; see also Benson, 941 F.2d at 612 ("Benson not only had to produce evidence of some animus or retaliatory motive – which the statements could provide – he also had to produce evidence tending to show that he would not have been prosecuted absent that motive.").

Defendant fails to make the necessary showing. He presents no evidence that the federal prosecutors failed to consider the usual determinative factors or that any state political issues affected the decision to prosecute him in federal court. Instead, he makes vague assertions that the case "can only be explained by political machination," that the "only logical goal . . . would be to . . . wreak havoc with the Governor's budget," and that the "Wisconsin Attorney General's Office and the U.S. Attorney's Office had [no] regard for the best interests of the State of Wisconsin." This is insufficient to upset the presumption of regularity supporting a prosecutorial decision. See, e.g., Jarrett, 447 F.3d at 527 (rejecting claim based on suspicious timing, speculation about the government's motives, and allegations that the U.S. Attorney's office failed to follow its internal procedures in pursuing an indictment, which could not take the place of clear and objective evidence); United States v. Baer, 235 F.3d 561, 565 (10th Cir. 2000) (rejecting vindictive prosecution claim based on "conjecture and speculation").

Defendant's evidence about the possible motives of the state actors and investigators is insufficient. The Seventh Circuit has consistently declined to impute the motives of investigating law enforcement officers to federal prosecutors. See, e.g., Spears, 159 F.3d at 1087 (collecting cases). The Seventh Circuit has also declined, in cases involving successive state and federal investigations or prosecutions, to impute to federal prosecutors the motives

9

of their state counterparts, see, e.g., id., even when the cases involve "common personnel," Heidecke, 900 F.2d at 1160; see also Algee, 309 F.3d at 1014-15 ("[T]he fact that there was some overlap between the personnel in the state prosecutor's office and the United States Attorney's office does not support a finding of prosecutorial vindictiveness."). Ultimately, "it is very difficult to sustain a claim of vindictive prosecution where two separate sovereigns are involved." Spears, 159 F.3d at 1087; see also United States v. Dickerson, 975 F.2d 1245, 1251 (7th Cir. 1992) (collecting cases). Under this case-law, even if defendant has raised a basis for questioning the conduct of state officials, an issue upon which I need not offer an opinion, he has failed to create any basis for doubting the federal prosecutors' motives.

For these reasons, defendant is not entitled to discovery or an evidentiary hearing, and his motion must be denied. The witnesses' motions to quash will be granted.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to dismiss (R. 65, 72) is **DENIED**.

**IT IS FURTHER ORDERED** that the motions to quash (R. 56, 66) are **GRANTED**.

**FINALLY, IT IS ORDERED** that this matter is scheduled for **TELEPHONIC STATUS** on **Monday, October 27, 2008, at 4:00 p.m.** The court will at that time schedule a new trial date. The court will initiate the call.

Dated at Milwaukee, Wisconsin, this 16th day of October, 2008.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

10