# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.              **Case No. 07-CR-219**

**LARRY LUPTON**
   **Defendant.**

## DECISION AND ORDER

Following a court trial, I found defendant Larry Lupton guilty of bribery, 18 U.S.C. § 666(a)(1)(B), wire fraud, 18 U.S.C. §§ 1343 & 1346, and two counts of making false statements to an FBI agent, 18 U.S.C. § 1001. Pending are two defense motions: a Motion for Acquittal under Fed. R. Crim. P. 29 and Arrest of Judgment under Fed. R. Crim. P. 34, and a Motion to Supplement Defendant's Exhibit List. I address the motions herein. I assume familiarity with the facts. (See Findings of Fact and Verdict [R. 96].)

### I. MOTION TO SUPPLEMENT

Trial in this case took place on March 2 and 3, 2009, post-trial briefs were filed on March 6, 2009, and I announced the verdict on March 16, 2009. Defendant initially filed his motion for acquittal and arrest of judgment on March 25, 2009, and re-submitted it at the direction of the Clerk on May 10, 2009. I established a briefing schedule, pursuant to which the government filed its response on May 26, 2009, and defendant his reply on June 2, 2009.

Along with his reply brief, defendant filed a "Motion to Supplement Defendant's Exhibit List," along with four new trial exhibits (copies of e-mails to and from defendant regarding the sale of the state building at issue in this case). Defendant claimed that the motion was made

"pursuant to the reservation of rights to supplement defendant's exhibit list made at trial," and that the attached documents "were not able to be copied and included in the defendant's ring binder of trial exhibits due to exigent time constraints placed on the defense by the court at the time of trial." (Def.'s Mot. to Supplement [R. 105] at 1.) Defendant cited and relied on the new exhibits in his reply brief in support of the motion for acquittal and/or arrest of judgment.

Defendant did not reserve the right to file new exhibits months after trial, and I did not grant permission for him to do so. Nor was defendant unfairly rushed at trial; I specifically granted defendant time <u>during</u> the trial to compile exhibits and obtain stipulations, even though the case had at the time been pending for nearly two years, and the trial date had been set more than four months previously. Defendant rested on March 3, 2009, and he did not then indicate that he needed more time to file exhibits. The government presented no rebuttal case after defendant rested.

Defendant also presented no legal authority supporting his position in the Motion to Supplement. I nevertheless noted that it appeared defendant was seeking to re-open the evidence, which the district court may, in its discretion, permit. <u>See, e.g.</u>, <u>United States v. Green</u>, 757 F.2d 116, 119 (7th Cir. 1985). On that understanding,[1] I ordered the government to respond and permitted defendant to reply.

In deciding a request to reopen the evidence, the court may consider whether the evidence is relevant and admissible, whether it is timely, whether admitting the evidence would distort its importance, whether the parties would be prejudiced, and the reason for the untimeliness. <u>United States v. Medina</u>, 430 F.3d 869, 879 (7th Cir. 2005). On consideration

---

[1] In his reply brief, defendant states that his motion is one to re-open the evidence. (Def.'s Reply Br. in Support of Mot. to Supplement [R. 109] at 1.)

2

of these factors, I deny the motion.

First, the evidence is untimely, and defendant provides no good reason for his tardiness. Trial in this case ended on March 3, and defendant fails to explain why he waited three months – and until after the government had responded to his post-trial motions – to seek permission to supplement. As explained above, defendant was not unfairly rushed at or before trial. Further, the government notes that defendant provided it with these new exhibits on October 22, 2007, nearly six months before trial. This is not a situation in which defendant obtained the documents only after the trial ended.[2] Finally, I fail to see how, as defendant claims, the significance of the issue addressed by the new documents emerged only after the verdict. (R. 109 at 1.) Even if it did, this does not explain why defendant waited another eleven weeks after the verdict to supplement.

Second, permitting the introduction of new evidence at this late stage would disrupt the proceedings and prejudice the government. The government rested and presented no rebuttal case based on the information presented by defendant at trial. It likewise filed a post-trial brief and a response to the motion for acquittal based on the evidence presented at trial. I issued nineteen pages of factual findings in support of the verdict based on the trial evidence. I could seek to ameliorate any unfairness to the government by allowing it to also introduce additional evidence, but that would result in further delay and require revised findings under Fed. R. Crim. P. 23(c). The case is set for sentencing on June 26, 2009, and has been pending since July

---

[2]Defendant argues that because the government had these documents months before trial there is no unfair surprise. (R. 109 at 2.) That would be a good argument if defendant had tried to introduce the documents at trial, and the government objected. But that is not what happened. Unfairness exists because the government has been deprived of the ability to address the documents at trial or in its post-trial briefs.

3

30, 2007. The court has an interest in managing its calendar and bringing cases to an orderly conclusion. See, e.g., Pfeil v. Rogers, 757 F.2d 850, 858 (7th Cir. 1985). The fact that this was a court rather than a jury trial does not excuse defendant from timely presenting his evidence.

Finally, the new documents, while arguably relevant, appear to be duplicative of other evidence in the record.[3] In these e-mails, defendant provides general guidance to prospective bidders on the state's expectations for the sale. In none of the e-mails does defendant provide specific bid details, as he did with Gabriel Silverstein, the broker from whom he sought a kickback in exchange for steering the sale to Silverstein's client. Any marginal value in admitting these documents is thus substantially outweighed by the other factors discussed above.[4] Defendant's motion to supplement will therefore be denied. See United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991) (finding no abuse of discretion in district court's refusal to reopen a case for the defendant after both parties had presented proof, rested, made closing arguments, and the district court rendered a verdict), overruled on other grounds as recognized

---

[3]In his reply brief in support of the motion to supplement, defendant indicates that he previously submitted similar e-mails. (R. 109 at 2.) He discusses those e-mails in his reply brief in support of the motion for acquittal. (R. 106 at 8-9.)

[4]In his reply brief (R. 109 at 2), defendant claims that the new documents rebut my finding that the "record contains no credible evidence that defendant disclosed bid information to the other LOI parties, so they might be encouraged to match or beat the best offer to date." (R. 96 at 14.) As indicated in the text, the new e-mails do not demonstrate that defendant provide specific bid details to others, as he did with Silverstein, the broker from whom he sought a kickback. Indeed, defendant stated, during a record conversation with Silverstein, "I mean everyone else, I'm not I'm not giving this sort of information to . . . . You know I'm close lipped . . . " (R. 96 at 10.) In any event, a trial is not a dress rehearsal, in which the parties can see how things go, then alter their cases during post-conviction or appellate proceedings after the district court rules against them. Cf. Shasteen v. Saver, 252 F.3d 929, 934 n.2 (7th Cir. 2001) (stating that materials may not be added to the appellate record to facilitate collateral attacks on the verdict).

4

in In re Jones, 226 F.3d 328 (4th Cir. 2000).

## II. MOTION FOR ACQUITTAL AND/OR ARREST OF JUDGMENT

In his Rule 29/34 motion, defendant argues that the indictment fails to charge acts constituting criminal offenses against the United States, and that the court lacks jurisdiction. I previously denied defendant's motions to dismiss, which raised variants of some of the arguments contained in the instant motion. I deny this motion, as well. I address the arguments in the motion, which contains fifteen numbered paragraphs, in the order in which they are presented.[5]

Defendant first argues that the duties identified in the indictment are common law contractual duties, common law fiduciary duties or state statutory duties of real estate brokers. He then states that I relied upon a common law contractual determination that two real estate brokers discussing a fee split, contingent on successful closing, does not involve bona fide compensation in the ordinary course of business under 18 U.S.C. § 666(c). (Def.'s Mot. for Acquittal [R. 102] ¶¶ 1-2.) As I explained in my Findings of Fact, defendant did not discuss a commission split with the other broker, Gabriel Silverstein; instead, he solicited a kickback in

---

[5]Because defendant had a court trial, he did not have to file a post-verdict Rule 29 motion challenging the sufficiency of the evidence. See United States v. South, 28 F.3d 619, 627 (7th Cir. 1994). I will nevertheless address his arguments based on the evidence at trial. In so doing, I will, as indicated earlier, assume familiarity with the facts. A Rule 34 motion may be granted only if (1) the indictment does not charge an offense, or (2) the court is without jurisdiction of the offense charged. See Charles A. Wright et al., Federal Practice and Procedure § 571, at 615 (2004). The court should not, in deciding a Rule 34 motion, consider the evidence at trial. Rather, such challenges fall under Rule 29. Further, defects of form in the indictment must be raised before trial by motion under Rule 12. Id. at 616-17. To the extent that the instant motion raises challenges to the evidence, I consider it under Rule 29. To the extent that defendant argues that the indictment fails to charge a valid federal offense, for the reasons stated herein and in my previous decisions denying defendant's motions to dismiss, I reject the argument.

5

exchange for steering the sale to Silverstein's client. This was not a common law contractual determination but rather a finding that defendant violated § 666(a)(1)(B), which forbids the corrupt solicitation of anything of value, intending to be influenced. I specifically rejected defendant's trial testimony that he intended this to be a commission split or other payment in the ordinary course of business. (R. 96 at 9-11.)

Second, defendant argues that I relied upon a common law finding of anticipatory breach of his contract with Equis in order to support a finding of guilt on the wire fraud count. (R. 102 ¶ 3.) As explained in the Findings of Fact, defendant violated his duties and defrauded Equis as part of a scheme to deprive Equis of both property and honest services, contrary to §§ 1343 and 1346. (R. 96 at 12-16.) The court may look to an honest services defendant's contract with his employer in determining the scope of his duties. See, e.g., United States v. George, 477 F.2d 508, 514 (7th Cir. 1973). As also explained in the Findings, § 1343 criminalizes schemes; the fact that law enforcement disrupted the scheme before money changed hands is irrelevant. (R. 96 at 16 n.12.)

Third, defendant argues that I relied upon Wis. Stat. § 452.133(1)(d) to create a federal criminal duty of confidentiality, while ignoring Wis. Stat. § 452.133(1)(g), which requires brokers to "negotiate."[6] (R. 102 ¶¶ 4-5.) Courts may in an honest services fraud case look to the duties imposed by state law. See, e.g., United States v. Segal, 495 F.3d 826, 834 (7th Cir. 2007), cert. denied, 128 S. Ct. 2069 (2008); United States v. Hausmann, 345 F.3d 952, 956 (7th Cir.

---

[6]As the government points out, the statute does not actually identify an affirmative duty to "negotiate." Rather, it states, at the end of a list of duties, "When the broker is negotiating on behalf of a party, the duty to present contract proposals in an objective and unbiased manner and disclose the advantages and disadvantages of the proposals." Wis. Stat. § 452.133(1)(g).

6

2003); see also United States v. Sorich, 523 F.3d 702, 712 (7th Cir. 2008), cert. denied, 129 S. Ct. 1308 (2009). Further, as I explained in the Findings, defendant was not "negotiating" with the prospective buyers; rather, he provided specific bid information only to Silverstein, the same broker from whom he sought a kickback. Defendant admitted, "everyone else, I'm not I'm not giving this sort of information. . . . I'm close lipped." (R. 96 at at 4.) He then promised Silverstein that "as long as you're in the game . . . I run the analysis and basically back you." (R. 96 at 4.)[7]

Fourth, defendant claims that I construed the Wisconsin Open Records Law to create a federal crime. (R. 102 ¶ 6.) Defendant is again mistaken. Defendant previously argued that the Open Records Law required him to disclose bid information. In a previous decision denying

---

[7] In his reply brief, defendant takes issue with my finding that he received the Roebling LOI, which contained a confidentiality clause, before he disclosed the specific details of the Roebling bid to Silverstein. (R. 106 at 6-7.) I explained in detail the basis for this finding (R. 96 at 5-6), and nothing defendant presents in his reply brief persuades me of error. Defendant has never provided any explanation why, if the specific bid details were not confidential, he would lie to FBI Agent Sparacino about having disclosed them, or why he told Silverstein, "everyone else, I'm not I'm not giving this sort of information. . . . I'm close lipped." Finally, although defendant characterizes this finding as essential to the verdict of guilty, he fails to acknowledge my findings that he violated several other duties he owed to the State as a broker, as well as the duties he owed to Equis under his contract. Nor does he acknowledge my finding that he not only deprived the State and Equis of honest services, he also executed a scheme to deprive Equis of money. The government made clear that it intended to pursue – and I found that it had proved – the wire fraud case under both theories. Defendant also argues in his reply brief that he, in fact, disclosed bid details to other parties. (R. 106 at 8-9.) However, none of the documents he cites reveal that he disclosed specific bid details as he did with Silverstein. In making this argument, defendant relies in part on the supplemental evidence I have excluded, but even if I considered the new evidence, the result would be the same. Defendant makes a vague allegation that I have violated the Fifth Amendment by faulting him for not presenting evidence that he disclosed bid details to others. (R. 106 at 9.) In my Findings, I noted that the "record contains no credible evidence that defendant disclosed bid information to the other LOI parties, so they might be encouraged to match or beat the best offer to date." (R. 96 at 14.) Defendant takes the statement, made in response to one of his arguments, out of context. (R. 96 at 13-14.)

7

a motion to dismiss on this ground, I noted that defendant could at trial testify as to his understanding of the requirements of state law, including the Open Records Law, in contesting intent to defraud. (R. 28 at 10.) I rejected his trial testimony in this regard, finding that:

> defendant was not trying to comply with the Open Records Law here; Silverstein did not ask for the Roebling LOI [Letter of Intent] under the Open Records Law; defendant disclosed its terms in exchange for a kickback. Further, defendant said nothing about the Open Records Law to [FBI] Special Agent Sparacino; rather, he denied disclosing confidential information and specific bid details.

(R. 96 at 13 n.9.) My discussion of the Open Records Law was thus in response to arguments defendant made; I did not rely on that law to "create" any crime.

Fifth, defendant argues that I re-wrote Wis. Stat. § 452.133(3)(a), which forbids a broker from accepting a fee from another party without written consent of all parties, to criminalize even discussing the concept of multiple party payment of broker fees. (R. 102 ¶ 7.) As explained in the Findings, defendant was not exploring dual or designated agency, multiple party payment of fees, a commission split between brokers, or anything of the sort. He solicited a kickback in exchange for steering the sale to a particular buyer, and made quite clear that he wanted nothing in writing and nothing leaked back to the State or Equis, actions fundamentally inconsistent with a legitimate fee split. (R. 96 at 4; 14-16.) I did not find that a writing was required before a broker could discuss a fee split; I found, based on defendant's own words, that he never intended to reduce any of his dealings with Silverstein to writing, and that he acted with the specific intent to defraud the State and Equis. There is no First Amendment right to engage in such conduct. See, e.g., Illinois ex rel. Madigan v. Telemarketing Associates, Inc., 538 U.S. 600, 612 (2003) ("[T]he First Amendment does not shield fraud."); Commodity Trend Service, Inc. v. Commodity Futures Trading Com'n, 233 F.3d 981, 992 (7th Cir. 2000) ("Laws directly punishing fraudulent speech survive constitutional

8

scrutiny even where applied to pure, fully protected speech."); United States v. Waymer, 55 F.3d 564, 569 (11th Cir. 1995) (rejecting First Amendment challenge to § 1346); see also United States v. Williams, 128 S. Ct. 1830, 1841 (2008) ("Offers to engage in illegal transactions are categorically excluded from First Amendment protection."). Nor does application of the fraud statutes here offend principles of federalism, see Hausman, 345 F.3d at 958-59, or result in the creation of a new federal crime, as defendant argues in his reply brief (R. 106 at 5). See Segal, 495 F.3d at 834 (indicating that "state laws are useful for defining the scope of fiduciary duties"). Finally, as also indicated above, federal law can be violated before money changes hands.

Sixth, defendant argues that I based the finding of materiality on the false statement counts on my view of state common law concepts. (R. 102 ¶ 8.) I explained why the statements were material in the Findings; state common law or statutory principles were not part of the analysis. (R. 96 at 17, 18.) Defendant further argues that if the bid proposals were not, in fact, "confidential" it would not be a misrepresentation of material fact to misinform the FBI as to whether they had been disclosed. As I explained in denying a previous motion raising a similar argument, § 1001 covers material, false statements of any kind. A defendant can be convicted of making false statements even if the underlying conduct about which he lied had not been proven criminal. (R. 28 at 19-20.) False statements need only have a tendency to influence the investigation, which may include attempting to deflect suspicion from the speaker. See United States v. Turner, 551 F.3d 657, 664 (7th Cir. 2008), cert. denied, 2009 WL 1146449 (U.S. June 1, 2009). In any event, defendant was not charged with lying about whether he disclosed "confidential" information. In count three, he was charged with lying about his disclosure of specific bid details, which the recorded conversations plainly reveal he

9

disclosed.[8] Count four alleged that he falsely denied suggesting that Silverstein pay him directly in cash or by check payable to a company other than Equis, which, again, he plainly did during the recorded conversations. (R. 96 at 6-7, 17-19.)

Seventh, defendant argues that the indictment and my Findings of Fact result in the creation of a federal common law crime. (R. 102 ¶¶ 9-12.) The indictment charged that defendant violated federal statutes, 18 U.S.C. §§ 666, 1001 & 1343, which was sufficient to confer jurisdiction. See United States v. Bjorkman, 270 F.3d 482, 490 (7th Cir. 2001) (stating that "district judges always have subject-matter jurisdiction based on any indictment purporting to charge a violation of federal criminal law"). I found that the government proved all of the elements of these crimes, and reliance in part on state law duties in considering the honest services count did not result in a federal common law crime. The Seventh Circuit has held that if someone misuses his position for private gain, as I found defendant did here, liability exists under the federal fraud statutes and § 1346. See United States v. Bloom, 149 F.3d 649, 656-57 (7th Cir. 1998).

Eighth, defendant renews his argument that he is not an "agent" under § 666. (R. 102 ¶ 13.) I previously found that the indictment properly alleged this element (R. 28 at 11-14), and the government proved at trial that defendant was authorized to act on behalf of the Wisconsin DOA (R. 96 at 8-9). As I explained in previous orders, an "independent contractor" may be an agent under § 666 (R. 28 at 12-13, citing United States v. Vitillo, 490 F.3d 314, 323 (3d Cir. 2007)), the indictment sufficiently alleged that defendant was authorized to act on behalf of the Wisconsin DOA (R. 28 at 14), the entity receiving federal funding (R. 87 at 4), and the

---

[8]The FBI did ask defendant about "confidential" information as well, but the indictment referred to "specific bid details."

10

government proved that defendant was an agent at trial (R. 96 at 8-9). Defendant cites no authority supporting his contention that he could not be an agent absent some specific delegation from the State. (R. 106 at 2.) Defendant again cites language from Equis's contract with the State, that Equis's sub-contractors would not be considered agents of the State. (R. 106 at 3.) As I indicated in denying defendant's previous motion to dismiss based on this provision, the trial evidence would determine whether, under federal law, defendant qualified as an agent under § 666. (R. 87 at 2-3.) Further. this is not an identity case like United States v. Allen, 383 F.3d 644 (7th Cir. 2004), upon which defendant relies. (R. 106 at 4.) In Allen, the court held that a certified judgment bearing the same name as the defendant is alone insufficient to prove that the defendant had a prior felony conviction, an essential element in a felon in possession case. Id. at 648. Allen does not support defendant's argument that the government had to present some document delegating authority from the State to him. The government proved beyond a reasonable doubt that defendant was, in fact, authorized to act on behalf of the State, and did so act, as described in the Findings. (R. 96 at 8-9.) Defendant argues that he was not authorized to make decisions for or bind the State, but he cites no authority that such is necessary under § 666.

Ninth, defendant argues that he must be acquitted on the wire fraud count because the interstate wire communication at issue involved the disclosure of bid proposals that were not confidential as a matter of law. (R. 102 ¶ 14.) The argument misses the mark, factually and legally. As a matter of fact, the Roebling LOI, which defendant disclosed during the relevant interstate phone call, contained a confidentiality clause (one modeled on the clause defendant created in a template LOI). (R. 96 at 5-6; 16.) Defendant had a duty "to keep confidential any information given to [him] in confidence." Wis. Stat. 452.133(1)(d). And as a matter of law, the

11

charged wire transmission need not <u>itself</u> contain false or misleading information, cause pecuniary loss, or otherwise amount to a violation of law; it need only be incident to an essential part of the scheme or a "step in the plot." <u>See, e.g.</u>, <u>United States v. Brocksmith</u>, 991 F.2d 1363, 1367-68 (7th Cir. 1993). The wire communication here, in which defendant disclosed to the broker from whom he sought a kickback specific details of the best bid, met this standard. (R. 96 at 16.)

Finally, defendant argues that the false statement counts must be dismissed because the evidence failed to demonstrate materiality. (R. 102 ¶ 15.) As set forth in the Findings, the government proved this element beyond a reasonable doubt. (R. 96 at 17, 18.)

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motions for acquittal and/or arrest of judgment (R. 102) and to supplement (R. 105) are **DENIED**.

Dated at Milwaukee, Wisconsin, this 22nd day of June, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

12